THE STATE, EX REL. MINTURN, *v.* ELLIOTT ET AL.

[No. 19,795.    Filed March 12, 1902.]

ELECTIONS.—*Primary Election Law.*—The act of 1901 (Acts 1901, p. 495) known as the primary election law does not govern nominations for office which are required to be filled by the voters of a district composed of more than a single county.

From Marion Circuit Court; *E. Daniels*, Special Judge.

Action by State on relation of Joseph A. Minturn to compel Charles N. Elliott, chairman of the republican central committee of Marion county and the members of the board of primary election commissioners to place the name of relator on certain ballots as a candidate for senator of the joint senatorial district composed of the counties of Marion and Morgan. From a judgment denying relator the relief demanded, he appeals. *Affirmed.*

*J. B. Sherwood*, for appellant.

*F. A. Joss* and *J. W. Noel*, for appellees.

JORDAN, C. J.—Action by the State, on the relation of Joseph A. Minturn, to obtain a mandamus to compel appellee, Charles N. Elliott, chairman of the republican central committee of Marion county, Indiana, together with his co-appellees, members of the board of primary election commissioners, to place the name of relator on certain ballots as a candidate for senator of the joint senatorial district composed of the counties of Marion and Morgan, which ballots were to be used by the voters of the republican party of said Marion county in voting for candidates for various offices at a primary election to be held in said county of Marion on March 14, 1902, under and in pursuance of an act of the legislature approved March 11, 1901, entitled "An act for the purification of primary elections," etc. Acts 1901, p. 495. Separate demurrers by the appellees were sustained to the petition and alternative writ, and the court rendered its judgment denying the relator the relief which he de-

manded. The rulings of the court on these demurrers are the errors assigned by the appellant in this appeal.

The relator, in his petition, discloses his eligibility to the office, and alleges, among other things, that the republican county committee of Marion county has decided to nominate certain officers by a direct primary election; that. he filed an application, within the prescribed time, to have his name placed on the ballot as a candidate for joint senator for the district composed of the counties of Marion and Morgan; that said chairman, Elliott, appellee herein, refused to receive the same and informed him that the candidate for said office would be selected by a delegate convention to be held by the two counties. The petition closes with the prayer that the defendants be required to place relator's name upon the ballot as demanded.

Counsel for appellant contends that under the provisions of the act of 1901, the duty is enjoined on appellee to cause the relator's name to be placed on the ballots as a candidate for senator of the joint senatorial district composed of the two counties in question, in order that the voters of the republican party of Marion county, of which political party he is a member, may be afforded an opportunity to cast their votes for him as a candidate for senator of the aforesaid mentioned district. On the other hand, counsel for appellees insist that the statute does not provide for holding a primary election for the nomination of a senator from a senatorial district composed of more than one county; that the act does not contemplate such districts, or include them within its provisions; and that no means or methods are provided by the law for canvassing the returns or ascertaining the result of a primary election which might be held on the same day in such senatorial district for the purpose of nominating a candidate for joint senator to be voted for by the voters thereof at the next general State election. Section 1, of the act in controversy reads as follows: "That any and all political parties in counties of the State in which there is lo-

cated a city with a population of 50,000 or more according to the last preceding United States census, which cast at the then last preceding general election ten per cent. of the total vote, desiring to nominate any candidate or candidates for any office or offices in any county, city, town, township or municipality in this State, or direct or manage or control a campaign for the election of any candidate or candidates for any office or offices in any county, city, town, township, or municipality in this State, shall make such nominations and conduct such campaigns in the manner prescribed in this act."

Under §25 of the act, in any and all counties of this State in which there is no city having a population of 50,000 or more, according to the last preceding United States census, the matter of holding a primary election for the nomination of candidates under the provisions of the act is optional with the central committee of such county or counties.

By the express provisions of §1, the law is made to apply to any and all political parties in counties of this State in which there is located a city having a population of 50,000 or more according to the last preceding United States census. All political parties in such designated counties, which at the last preceding general election cast ten per cent. of the total vote, desiring to nominate any candidate or candidates for any office or offices in such county, or in any city, town, township, or municipality therein, are required to make such nominations under and according to its provisions. When the act refers to the chairman of the committee, it designates or denominates him as the chairman of the county or city committee, and in no part of the statute is the chairman of any district committee mentioned. It is certainly evident, from the language of this law, that, in any and all counties in which it is intended to operate compulsorily upon political parties coming within its provision, such parties, in nominating candidates for any office to be voted for and elected alone by the qualified electors of the particular county, or by those of the city, town, or town-

ship therein, as to such nominations, must be controlled by its provisions. A careful reading of the statute fully and clearly discloses that it does not profess to apply to or govern nominations for offices which are required to be filled by the voters of a district composed of more than a single county, such as is the senatorial district which, under the provisions of the apportionment law for representatives and senators, is composed of the two counties of Marion and Morgan. There is absolutely nothing in the statute in question to indicate that it was in any manner the intention of the legislature that it should apply to or control the nominations of candidates for offices to be filled by the electors of a district or division of territory composed of more than one county.

Had the legislature intended that this act should govern in the nomination of public officials to be elected by the voters of a district composed of two or more counties, it is reasonable to assume that provisions would have been made therein for holding a joint primary election in such district, and for making the proper returns of the result of the election in each of the counties constituting the district. If there were any doubt in respect to the interpretation of this act, this omission on the part of the legislature would go far in authorizing the interpretation that it was not intended to have any application whatever to a joint senatorial district composed, as is the one in question, of the counties of Marion and Morgan. Counsel for appellant places much stress on the term "municipality" as employed in §1, and argues that by the use of this term the legislature intended to make the act applicable to joint senatorial districts. The word "municipality", as there employed, may be said to be a tautological expression, and adds nothing to the sense or meaning expressed by the words "county, city, town or township" immediately preceding it; nor can it be said to extend the provision of the act to any other or greater subdivision than those intended by the term "county, city, town

or township." A municipality is generally defined and understood to mean a subdivision of the State for the purpose of local self government. See Webster's International Dict.; Dillon on Munic. Corp. (4th ed.), §20; 15 Am. & Eng. Ency. of Law (1st ed.), 952 and notes; *Root* v. *Erdelmeyer*, 37 Ind. 225. Certainly this term, as employed in the statute, can not be construed to intend or mean a joint senatorial district. As the act in dispute, under its provisions, was not intended to control nominations such as that of joint senator, to which the relator in this case aspires, even had the resolution adopted by the republican central committee of Marion county declared that such nomination should be made, under the provisions of this act, he would have been placed in no more favorable position than he now occupies to secure the writ which he demands.

Section 1182 Burns 1901, §1168 Horner 1901, provides: "Writs of mandate may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, or a duty resulting from an office, trust, or station." The performance of the act enjoined, or the duty resulting from the office, trust, or station, must be clear and positive, otherwise the writ will be denied. As a general rule a writ of mandate is never awarded in doubtful cases. *State, ex rel.,* v. *Bonnell,* 119 Ind. 494; *Burnsville, etc., Co.* v. *State, ex rel.,* 119 Ind. 382, 3 L. R. A. 265; Merrill on Mandamus, §37.

It may be said, however, that this case does not fall within the doubtful rule, as no doubts, in respect to its interpretation, are entertained by the court.

It is so evident from a reading of the statute in question that no such duty as the relator, under the facts alleged in his petition, demands that appellees shall be coerced to perform, is enjoined upon them either expressly or impliedly, by any of the provisions thereof, that further consideration of the question is useless. It follows, therefore, that the demurrers to the petition and alternative writ were properly sustained, and the judgment of the lower court is affirmed.