HANSON, ET AL., Appellants, v. CITY OF CRESCO.

**Municipal corporations:**—SEVERANCE OF TERRITORY: EVIDENCE. In a proceeding to sever certain territory from the limits of a corporation, evidence that the property paid a higher tax than would be assessed against it if severed, though paying no city tax, because of a difference in the valuation by the municipal and township assessors is inadmissible.

**Same.** In such proceeding evidence as to how the territory came to be included within the corporation is incompetent on the question of severance.

**Severance of territory:** SANITARY REQUIREMENTS. The fact that a city owns a tract within the corporation, needed and used for sewerage and garbage purposes, will not control the question of severance of the territory within which such tract is located.

**Same:** LOCATION OF PEST HOUSES. A township is a "municipality" within the contemplation of Chapter 108, Acts Twenty-ninth General Assembly, relating to controversies respecting the location of pest houses, so that a city may under the provisions of the Statute maintain a pest house outside of its corporate limits; therefore an instruction that in case of the severance of territory containing the pest house and premises the city could no longer maintain and use the same in that location was erroneous.

*Appeal from Howard District Court.*— HON. A. N. HOBSON, Judge.

FRIDAY, DECEMBER 14, 1906.

THIS is a proceeding under the provisions of Code, section 622, for the severance of territory from the defendant city. There was a trial to a jury, resulting in a verdict against the proposed severance, and from the judgment on such verdict the plaintiffs appeal.— *Reversed.*

*Converse & Grannis,* for appellants.

*W. L. Barker* and *C. W. Reed,* for appellee.

McCLAIN, C. J.— The plaintiffs, as resident property holders of that part of defendant city which they ask to have severed from the city, allege that the land is not needed for city purposes, and is not platted, and is used exclusively for agricultural purposes, and not needed for any possible increase of the city population, nor benefited by being in the corporation. In support of the allegations of their petition, they sought to show that, although their property was not taxed for city purposes (see Code, section 616), nevertheless, it was taxed at a higher valuation on account of being within the city limits than it would be taxed if it were outside of the limits of the city, and they complain of the refusal of the court to allow such evidence to be introduced. They also complain of the rejection of evidence as to why the territory, the severance of which is asked, was originally annexed to the city. Defendant introduced evidence to show that a ten-acre tract, included within the territory to be severed, was owned and used by the city as a garbage lot, and as the location of a pesthouse, and was also allowed to show that the city is establishing a system of sewers for which an outlet through the territory in question will be necessary, and the court instructed the jury that, in arriving at a verdict, they should consider the needs of the city for sewerage and sanitary purposes, and the question of municipal control over the garbage lot, pesthouse, and proposed sewers; that the wishes of the owners of the land should not be permitted to control as against the probable needs of the city in the future for sewerage and sanitary purposes, and the importance of the city having jurisdiction of the territory in question for the various purposes accomplished by the exercise of the police powers of the city; and that, under the law, in case the territory in question should be severed, the city of Cresco could not maintain or continue to use the pesthouse at its present location if such use should be objected to by the officials of Vernon township within which the territory to be severed is located, which

fact they should carefully consider, and give due weight.

I. There was no error in refusing to receive the evidence offered to show that the township assessors do not fix real estate values at the actual value of the property, and

1. MUNICIPAL CORPORATIONS: severance of territory: evidence.

that the rate of taxation on the property of petitioners was therefore higher within the city limits on account of the city assessor listing the land in question at its actual value. "We cannot presume that appellants will be taxed upon other than a fair valuation, nor that if so taxed the equalization boards will not offer them proper relief." *Christ v. Webster City,* 105 Iowa, 119. And, see *Monk v. Incorporated Town of George,* 86 Iowa, 315; *Johnson v. Town of Forest City,* 129 Iowa, 51. Evidence that, as a matter of fact, lands in Vernon township were not taxed at their full valuation would clearly not be competent, for it must be conclusively presumed that the township assessors as well as the city assessors will perform their duty, or that if they negligently or wrongfully act in this discharge of their duty the error will be corrected in the proper form of procedure.

II. The offered testimony as to how the territory in question came to be within the limits of the corporation could surely be of no significance in determining whether

2. SAME.

it should be severed. No matter what the motive for its original annexation, if it is now proper that it be retained, the petition for severance should be denied.

III. The real difficulty in the case arises out of the changed relation of the city to the territory in question which will result from severance as to the maintenance of sewers

3. SEVERANCE OF TERRITORY: sanitary requirements.

through such territory, and the use of the ten-acre tract belonging to the city for garbage disposal, and as a location for the city pesthouse. We think, however, that the question of sewerage is not controlling, for by chapter 37, Acts of Thirtieth General Assembly (1904), it is provided that cities and towns shall

have the power to acquire real estate outside of the territorial limits, necessary for sewer outlets, and having acquired such territory, we see no reason why the defendant city could not maintain its sewers through the property thus acquired for that purpose regardless of whether it should be within or outside of the limits of the city. The same statute authorizes the acquisition of real estate outside of the city limits for garbage disposal plants and dump grounds, and the same considerations apply as with reference to sewer outlets. Perhaps the city would not be allowed to maintain a nuisance to the annoyance of occupants of neighboring property, but the same objection could be made to the improper use of the garbage lot if it remained within the city limits. In assuming therefore that the needs of the city for sewerage and sanitary purposes might be interfered with by the severance of the territory, we think the court erred.

There was further error, as we think, in the statement by the court in its instructions, as a matter of law, that the city could not, after severance of the territory including the ten-acre tract on which the pesthouse is located, maintain, or continue to use the pesthouse on such lot if objected to by the officials of the township. This statement of the law was undoubtedly correct prior to the enactment of chapter 108, Laws of Twenty-Ninth General Assembly (Code Supp. 1902, section 2575, a, b), for it was held in *Warner v. Stebbins,* 111 Iowa, 86, that the trustees of a township might enjoin the health officers of a city from maintaining a pesthouse within the limits of their township and outside of the city limits. But the statute just referred to is as follows:

4. SAME: location of pest houses.

Section 1. When a controversy arises between municipalities or between boards of health thereof, respecting the location of pesthouses or hospitals for the treatment of infectious or contagious diseases, such matter shall be referred to the president of the state board of health, who shall forthwith appoint a committee of three members thereof, which

committee shall, upon two days' notice to the parties interested, investigate the matter and make such order in the premises as the facts warrant, and such order shall be final.

Sec. 2.  The health officers of the municipality which is allowed to maintain a pesthouse or hospital for patients affected by infectious or contagious diseases outside the limits of said municipality, shall have exclusive jurisdiction and control of such pesthouse or hospital for the enforcement of all sanitary and health regulations.

If this statute is applicable as between the defendant and the township of which the territory to be severed is a part, then it does not follow as a matter of law that the severance of the territory including the ten-acre tract on which the pesthouse is located will necessarily result in the abandonment of the use of the pesthouse if objected to by the officers of the township, for it might be that, under the provisions of the statute, the city would be allowed to maintain its pesthouse in its present location.  In determining whether the statute is applicable as between a city and township, the difficulty is in the interpretation of the term "municipality."  If the township is a municipality, then the statute, by its terms, applies to the present case; otherwise, it does not.

"A municipal corporation, in its strict and proper sense, is the body politic and corporate constituted by the incorporation of the inhabitants of a city or town for the purpose of local government thereof."  1 Dillon, Municipal Corporations (4th Ed.) section 19.

The term involves the idea of voluntary association by the inhabitants of particular territory, sanctioned by the power of the State for the purposes of local self-government.  But the sovereign power may, without regard to any prior agreement or action on the part of the inhabitants of the territory involved, provide for the exercise of powers such as the election of local officers by the inhabitants of such local subdivisions, and these organizations, though public in character, and partaking somewhat of the nature of

a corporation, are not, strictly speaking, corporations, but *quasi* corporations.

The municipal corporation possesses a corporate capacity and an identity distinct from the State, while the *quasi* corporation is but one of the members or parts of the State, having no distinct identity. It is, in all respects, a mere agency, having no voice in its own creation. . . . The real distinction between the municipal corporation, properly so called, and the local organizations, such as unincorporated townships, school districts, and counties, consists in the fact that the municipal corporation is a voluntary one, originating in personal agreement, while the so-called *quasi* corporations are the mere creatures of the Legislature. They have no inherent charter rights as to their local self-government, except as protected by the Constitution. Their functions are entirely governmental. Andrews' American Law, 505, 506.

*Quasi* corporations, as distinct from municipal corporations, are composed of the inhabitants of any district who are, by statute, invested with particular powers without their consent. . . . They include counties, towns, parishes, school districts, etc. 1 Thompson, Corporations, section 20.

A *quasi* corporation, as distinct from a municipal corporation, is an involuntary political or civil division of the State created by general laws, to aid in the administration of government; and the term includes counties, townships, school districts, road districts, and like public *quasi* corporations, existing under general laws of the State, which apportion the territory of the State into political divisions for convenience of government, and require of the people, residing within those divisions, the performance of certain public duties as a part of the machinery of the State, and in order that they may be able to perform these duties, vest them with certain corporate powers. 1 Beach, Public Corporations, section 6.

A *quasi* corporation is a body which has some, but not all, of the powers of a corporation. Towns, counties, and school districts, etc., are not strictly public corporations, but they have some of the powers of a corporation. Clark, Corporations, 31.

In applying this distinction, it has been held that: " Counties are at most but local organizations, which, for the purposes of civil administration are invested with a few functions characteristic of a corporate existence. They are local subdivisions of the State, created by the sovereign power of the State of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. The former (municipal) organization is asked for, or at least assented to, by the people it embraces. The latter (county) organization is superimposed by a sovereign and paramount authority. . . . A municipal corporation proper is created ·mainly for the interest, advantage, and convenience of the locality and its people. A county organization is created almost exclusively with a view to the policy of the State at large, for purposes of political organization and civil administration in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all of the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are, in fact, but a branch of the general administration of that policy." *Hamilton County v. Mighels,* 7 Ohio St. 109, quoted with approval in 1 Dillon, Municipal Corporations (4th Ed.) section 23. And see to the same general effect: *Board of Commissioners of Johnson Co. v. Scaright Cattle Co.,* 3 Wyo. 777 (31 Pac. 268); *Stermer v. Board of Commissioners of La Plata Co.,* 5 Colo. App. 379 (38 Pac. 839); *Schweiss v. District Court of First Judicial District,* 23 Nev. 226 (45 Pac. 289, 34 L. R. A. 602); *Duval County v. Charleston Lumber & Mfg. Co.,* (Fla.) (33 South. 531, 60 L. R. A. 549); *Freeland v. Stillman,* 49 Kan. 197 (30 Pac. 235); Tiedeman, Municipal Corporations, section 3. In this sense, the State itself, if properly described as a corporation at all, is a *quasi,* and not a municipal cor-

poration. *Tice v. Atlantic Construction Co.,* 65 N. Y. Supp. 79; Tiedeman, Municipal Corporations, section 5.

A township is clearly therefore to be classed with *quasi* corporations, and not with municipal corporations. *Eaton v. Supervisors of Manitowoc County,* 44 Wis. 489. *Cathcart v. Comstock,* 56 Wis. 590, 606 (14 N. W. 833). And see *Heller v. Stremmel,* 52 Mo. 309; *State ex rel. v. Leffingwell,* 54 Mo. 458. In this State " each county is a body corporate for civil and political purposes," and has conferred upon it the power to sue and be sued, and other corporate powers. Code, section 394. But a township is not expressly declared to be a body corporate for any purpose. It has not the right to sue or to be sued, and it has none of the characteristics of a corporation. It is a mere subdivision of the county for governmental purposes. *Wells v. Slomback,* 59 Iowa, 376; *Township of West Bend v. Munch,* 52 Iowa, 132.

The term " municipal " as used in defining a corporation, indicates by its historical meaning a corporation proper, as distinguished from a *quasi* corporation, and designates only cities and incorporated towns which have powers of local self-government, and, in strictness of meaning, would not include counties and school districts, although they are expressly declared by statute to be bodies corporate. But, in common speech, the term municipal corporation is used to include all public or political corporations having corporate powers. *Winspear v. District Township,* 37 Iowa, 542; *Curry v. District Township,* 62 Iowa, 102; *Iowa Railroad Land Co. v. Carroll County,* 39 Iowa, 151, 166; *Powder River Cattle Co. v. Board of County Commissioners,* 3 Wyo. 597 (29 Pac. 361); *State ex rel. v. Leffingwell,* 54 Mo. 458, 465; Anderson, Law Dictionary, 363; 2 Bouvier, Law Dictionary (Rawle's Ed.) 453; and see the cases collected in 5 Words and Phrases Judicially Defined, 4620.

With this general view of the meaning of the term " municipal corporation," and the specific declaration of this

court that a township is not a municipal corporation, we· come to the question whether a township is a municipality within the language of the statute above quoted.   The term "municipality" has sometimes been limited by definition to include only municipal corporations, in the proper and strict sense.   *Briegel v. Philadelphia,* 135 Pa. 451 (19 Atl. 1038, 20 Am. St. Rep. 885) ; *In re Werner,* 129 Cal. 567 (62 Pac. 97) ; *Memphis Trust Co. v. Board of Directors,* 69 Ark. 284 (62 S. W. 902) ; 2 Bouvier, Law Dictionary (Rawle's Ed.) 459 ; Encyclopedia Brittanica.   And see definitions of the term municipality in Black, Law Dictionary; Webster, International Dictionary; and Century Dictionary.   But the term is also used by good authority in a broader sense, to include public and political corporations, which are not strictly municipal.   *Spalding Lumber Co. v. Brown,* 171 Ill. 487 (49 N. E. 725) ; *State ex rel. v. Elliott,* 158 Ind. 168 (63 N. E. 222) ; *Brown v. Board of Education,* 108 Ky. 783 (57 S. W. 612) ; *Commissioners v. Fell,* 52 N. J. Eq. 689 (29 Atl. 816) ; *Miller v. Town of Jacobs,* 70 Wis. 122 (35 N. W. 324) ; Anderson, Law Dictionary, 692.   And see cases collected in 5 Words and Phrases Judicially Defined, 4630.

It is apparent, therefore, that in determining the meaning to be given to the word "municipality" as used in the statute for the purpose of applying it to this case, we need not be limited to its historical meaning, but may take into account the intention of the Legislature for the purpose of ascertaining whether it was used to include townships. Cities and incorporated towns are usually surrounded by territory included within the limits of townships, and it would be natural to suppose that this general situation was in the minds of the legislators and that the purpose was to allow cities to maintain pesthouses, under the provisions of the statute, within the territorial limits of the adjoining townships, and outside of the city limits.   It is true that the territory of a city or incorporated town may abut upon the

territory of another city or incorporated town, but such a
condition is infrequent, and it can hardly be thought to have
been the purpose of the Legislature to provide only for such
a condition.   Indeed, it would be manifestly absurd to sup-
pose that the purpose of the statute was to authorize a city
or town to maintain a pesthouse within the limits of another
city or town.   The statute was passed at the next session of
the Legislature which convened after the decision in *Warner
v. Stebbins,* 111 Iowa, 86, was announced, in which it was
held that a city could not maintain a pesthouse within the
limits of an adjoining township, and it is reasonable to sup-
pose that the Legislature had in mind the decision in this
case, with the purpose of modifying the rule there an-
nounced.

It is true that this court decided in the case of *District
Township v. Frahm,* 102 Iowa, 5, that a school district,
although it is a body politic and a corporation (see Code,
section 2743), is not a municipality under the mulct law
(Code, section 2445), by which it is provided that the
revenue derived from the mulct tax shall be paid in to the
county treasurer, one-half to go into the general county fund,
and the remainder to be paid over to the municipality in
which the business taxed is conducted.   But the court said:
" It is the legislative intention in the use of this word for
which we are now to inquire, rather than the technical or
general sense in which it is used.   .   .   .   It is a fact that
places for the sale of intoxicating liquors are very generally
within incorporated cities or towns, and that it is excep-
tional when that business is carried on elsewhere."   As in
that case we held that the general purpose of the Legislature
as indicated by the situation involved might be taken into
account in determining what was meant by the term " mu-
nicipality," so now we hold that taking into account the
general situation to which the statute relates, the intention
must have been to include townships in the term " munici-
palities," in the absence of any more specific declaration of

the legislative intent.    We are satisfied that the statute was intended to apply as between a city and an adjoining township, and, therefore, the lower court erred in omitting to instruct the jury that the city might under some conditions as indicated by the statute, maintain its pesthouse on the ten-acre tract included in the territory asked to be severed, although by such severance the tract was excluded from the city limits, and would come within the jurisdiction of the board of health of the adjoining township.

For the reasons pointed out, the judgment of the trial court is *reversed*.