No. 25,844.

THE STATE OF KANSAS, ex rel. JUSTUS N. BAIRD, County Attorney of Wyandotte County, *Plaintiff*, v. J. M. JOSLIN, County Assessor of Wyandotte County; WILLIAM BEGGS, County Clerk of Wyandotte County; and GEORGE I. GRIFFITH, County Treasurer of Wyandotte County, *Defendants*.

SYLLABUS BY THE COURT.

STATES—*Compact and Agreement—Exempting Certain Waterworks from Taxation—Agreement Valid:* An agreement between the states of Kansas and Missouri, ratified by congress, that a waterworks plant of Kansas City, Mo., situated in Kansas City, Kan., adjoining a similar plant of the latter city, the two plants being capable of use and being in fact to some extent used in coöperation, each supplementing the other in certain circumstances, is not invalid on the ground that the property exempted is not of benefit to the public in a different way from property in general, nor on the ground that the subject is not one concerning which states may with the consent of congress enter into an agreement with each other, nor on the ground that the consent of congress may not be effectively given after the states have acted.

Original proceeding in mandamus. Opinion filed July 5, 1924. Writ denied.

*Justus N. Baird*, county attorney, for the plaintiff.

*J. H. Brady*, county counsellor, for the defendants; *Guy E. Stanley*, and *Judson S. West*, both of Kansas City, Mo., of counsel.

The opinion of the court was delivered by

MASON, J.: The city of Kansas City, Mo., for many years has owned and operated a waterworks plant in Kansas on the right bank of the Missouri river adjacent to the water and electric light plant of Kansas City, Kan. The plants have separate intakes, but filtered and purified water can be and is exchanged between the two plants. The city of Kansas City, Mo., at one time contended that its plant was free from Kansas taxation by virtue of provisions of the Kansas constitution and statutes exempting "all property used exclusively for . . . municipal . . . purposes" and all "property belonging exclusively to any . . . city." This court, however, held that these provisions refer only to municipalities in this state, and that a city of another state with respect to property owned by it in Kansas is upon no different footing with respect to local taxation from that of any other proprietor. (*The State v. Holcomb,* 85 Kan. 178, 116 Pac. 251.) Later the legislatures of Kansas and of Missouri each adopted a joint resolution by which the two states entered into a "compact and agreement," reciting the advantages derived from coöperation in the management of the two plants and providing that each of them as then existing or thereafter constructed or extended should be free from taxation by the other state (Laws of Kan. 1921, ch. 304; Missouri House Journal 1921, pp. 1258-1259; Senate Journal, pp. 932-933), and congress adopted a joint resolution consenting to such "compact and agreement" (42 U. S. Stat., ch. 431, p. 1058). The present proceeding is brought in this court by the state of Kansas, on the relation of the county attorney of Wyandotte county, seeking by mandamus to compel the taxing officers of that county to levy and collect taxes against the waterworks plant of Kansas City, Mo., located therein, upon the ground that the action of the legislature in undertaking to exempt it is unconstitutional and without effect. The case is submitted for judgment upon the pleadings, there being no controversy over the facts.

The state constitution exempts property of various kinds from taxation, such exemptions being "justified . . . upon the theory of peculiar benefits received by the state from the property exempted." (*Washburn College v. Comm'rs of Shawnee Co.,* 8 Kan. 344, 349.) The enlargement of these exemptions by the legislature

The State, *ex rel.*, v. Joslin *et al.*

is not expressly forbidden and is upheld where the same condition is met; that is, where the property exempted benefits the public in a way different from other property (*Wheeler v. Weightman*, 96 Kan. 50, 60, 61, 149 Pac. 977), and the legislative power is not "used in such a way as to introduce a system of taxation substantially different from that contemplated by the constitution" (p. 64).

The resolutions adopted by the Kansas and Missouri legislatures contain these recitals:

"WHEREAS, For the protection of each city in the event of a breakdown of its plant, a conflagration, epidemic, or other exigency, it is vitally important that its water plant have connection with and access to the facilities of the other; and it is, and has been in the past, of material benefit to each city that both contribute to a common fund in protecting the banks of the Missouri river in the vicinity of said plants and further upstream from breaking over and destroying the plants, or changing its course so as to leave the intake so far from the stream as to render it impossible to obtain an adequate flow of water therefrom; and

"WHEREAS, The water plants of both cities are connected at various points so that they can, in the future as they have in the past, supply each other with water, thereby preserving the health and protecting the property of each; and

"WHEREAS, The plant of the city of Kansas City, Missouri, is now, and will of necessity continue to be for a long period in the future, the only source of water supply to the city of Rosedale, in Wyandotte county, Kansas, and the maintenance of this supply is of vital importance to the health and property protection of the citizens of said municipality; and

"WHEREAS, The contour of the territory of each city is such that to reach and serve certain districts it is necessary that portions of the service mains and plants occupy or run through the territory of the other state; and

"WHEREAS, Kansas City, Missouri, is about to invest many millions of dollars in the betterment of its plant in the immediate future, and the city of Kansas City, Kansas, will invest in the future large sums in extending its plant; said extensions of each municipality necessitate large investments in the territory of the adjacent state, and to raise the funds for the purpose of making these investments it is vital to each city that each plant be free from assessment and taxation in the other state." (Laws of Kan., 1921, ch. 304.)

By the action referred to the Kansas legislature has in effect declared that, upon the grounds indicated the exemption of the waterworks plant in Wyandotte county owned by the city of Kansas City, Mo., is of peculiar public benefit. This decision of the legislature, having been made in the exercise of its proper functions and being based upon grounds that a court cannot pronounce to be capricious or without foundation in reason, is beyond judicial interference.

The federal constitution (art. 1, § 10, paragraph 3) by forbidding states to enter into any agreement or compact with each other without the consent of congress recognizes their power to do so with that consent. (*Poole v. Fleeger*, 36 U. S. 185, 209.) Moreover, some contracts or business arrangements between states may be effected without congressional consent. (*Virginia v. Tennessee*, 148 U. S. 503, 518.) "The terms 'compacts' and 'agreements,' as used in this section, cover all stipulations affecting the conduct or claims of states, whether verbal or written, formal or informal, positive or implied, with each other" (Annotated Constitution published by authority of U. S. Senate, p. 365) not forbidden by the constitution, for even with the consent of congress the states may not disobey its injunctions—may not, for instance, do any of the things prohibited by the first paragraph of the section cited (*In re Rahrer*, 140 U. S. 545, 560), such as entering into a treaty, alliance or confederation. It has been said that the clause "compacts and agreements" as distinguished from "treaty, alliance or confederation" may "very properly apply to such as regarded what might be deemed mere private rights of sovereignty, such as questions of boundary, interests in land situate in the territory of each other, and other internal regulations for the mutual comfort and convenience of states bordering on each other." (Quoted from Story's Commentaries on the Constitution [§ 1403] in *Virginia v. Tennessee*, 148 U. S. 503, 519.)

There is nothing in the subject matter of the arrangement here under consideration which because of any inhibition of the federal constitution removes it from the category of permissible agreements or compacts. The consent of congress was given by ratification after the two states had acted, but that is not a good ground of objection. "The constitution makes no provision respecting the mode or form in which the consent of congress is to be signified, very properly leaving that matter to the wisdom of that body, to be decided upon according to the ordinary rules of law and of right reason. The only question in cases which involve that point is, Has congress, by some positive act in relation to such agreement, signified the consent of that body to its validity?" (*Green v. Biddle*, 21 U. S. 1, 85.) "The constitution does not state when the consent of congress shall be given, whether it shall precede or may follow the compact made, or whether it shall be express or may be

implied. In many cases the consent will usually precede the compact or agreement, as where it is to lay a duty of tonnage, to keep troops or ships of war in time of peace, or to engage in war. But where the agreement relates to a matter which could not well be considered until its nature is fully developed, it is not perceived why the consent may not be subsequently given." (*Virginia v. Tennessee*, 148 U. S. 503, 521.) (See, also, other cases cited in the Annotated Constitution above referred to, pp. 362, 365.)

The writ asked is refused.