## KANSAS CITY, MO., v. FAIRFAX DRAINAGE DIST. OF WYANDOTTE COUNTY, KAN.*

Circuit Court of Appeals, Tenth Circuit. July 29, 1929.

No. 38.

*Rehearing denied October 21, 1929.

358

Fred Robertson, of Kansas City, Kan., and J. C. Petherbridge, of Kansas City, Mo. (John T. Barker, of Kansas City, Mo., on the brief), for appellant.

William Drennan, of Kansas City, Kan., and T. M. Lillard, of Topeka, Kan. (W. C. Rickel and Joseph A. Lynch, both of Kansas City, Kan., on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge. Fairfax Drainage District of Wyandotte County, Kansas, organized under the laws of Kansas, brought this action in January, 1928, against Kansas City, Missouri, to recover $12,860.50, with accrued interest and penalties, assessed as special benefits by the drainage district on 54 acres owned by the city. The acreage lies along the bank of the Missouri River in Kansas, all within the drainage district. The complaint alleges that on the land so owned by Kansas City, Missouri,

"There is now and was at all times herein mentioned located the waterworks plant of Kansas City, Missouri. That this waterworks plant is at the present time the sole source of water supply for Kansas City, Missouri, and the cost of maintenance of said waterworks plant is paid by charges collected from consumers in proportion to the amount of water consumed.

"Plaintiff alleges that during the years 1923, 1924 and 1925, certain special improvements were made by the Fairfax Drainage District of Wyandotte County, Kansas, for the purpose of protecting said District and the lands contained therein from overflow from the Missouri River and for the purpose of preventing said lands in said District from being flooded by the surface water, and for the further purpose of furnishing drainage to that District.

"That said special improvements consist of the following, to wit:

"(a) A dyke extending around the said Drainage District on the north, east and south.

"(b) What is known as the foot hill ditches and laterals to prevent the surface water from the surrounding territory overflowing the lands in said District and for the purpose of carrying said water through said ditches into the Missouri River.

"(c) The construction of a sewer and laterals and pump house and equipment for the purpose of draining surface water from out of said District, and conveying the same into Jersey Creek and the Missouri River.

"That the cost of the above mentioned special improvements were assessed according to law, against the lands contained in said Drainage District, on an acreage basis. That the aggregate cost of all of said improvements amounted approximately to the sum of $1,074,812.58. That these costs were paid for by the issuance and sale of bonds of said Fairfax Drainage District, said bonds being serial bonds maturing over a period of twenty years from the date of their issue. That each year, beginning with the year 1923, there was certified to the county clerk of Wyandotte County, Kansas, by the Board of Directors of the said Fairfax Drainage District, an amount sufficient to pay the interest and the bonds falling due in that particular year. That these amounts were assessed equally upon all the lands lying within the said Fairfax Drainage District, on an acreage basis, including the lands owned by the defendant, Kansas City, Missouri, as hereinbefore described. That the Board of Directors of said Drainage District continued to certify said assessments to the said County Clerk for the years 1924, 1925, 1926 and 1927. That the defendant, Kansas City, Missouri, has failed, neglected and refused to pay its special assessments as aforesaid assessed against its property located within said District, and that there now is due to the Fairfax Drainage District from the defendant, Kansas City, Missouri, as shown by the tax records in the office of the County Treasurer, a sum aggregating $12,860.50, including interest and penalties as provided by law."

The complaint was challenged by demurrer, on the ground that it did not state facts sufficient to constitute a cause of action, which was overruled. Defendant objected and excepted to the order of the court overruling its demurrer, and declined to plead further; and thereupon the court, over de-

fendant's objection and exception, entered judgment for plaintiff on the complaint for $12,048.50. Then this appeal was asked and allowed.

The chief point raised by the demurrer is the claim that a compact and agreement between the two States, made with the consent of Congress (Const. U. S. art. 1, § 10), exempted defendant's property from the assessment, thus:

"Be it resolved by the Legislature of the State of Kansas, the Governor concurring, that

"Whereas, The cities of Kansas in Wyandotte County, Kansas, and of Kansas City in Jackson County, Missouri, are contiguous and adjoining and each own and operate waterworks plants, the intake portions of which are on the banks of the Missouri River in Kansas City, Kansas, and contiguous to each other; and

"Whereas, For the protection of each city in the event of a breakdown of its plant, a conflagration, epidemic, or other exigency, it is vitally important that its water plant have connection with and access to the facilities of the other; and it is, and has been in the past, of material benefit to each city that both contribute to a common fund in protecting the banks of the Missouri River in the vicinity of said plants and further upstream from breaking over and destroying the plants, or changing its course so as to leave the intake so far from the stream as to render it impossible to obtain an adequate flow of water therefrom; and

"Whereas, The water plants of both cities are connected at various points so that they can, in the future as they have in the past, supply each other with water, thereby preserving the health and protecting the property of each; and

"Whereas, The plant of the City of Kansas City, Missouri, is now, and will of necessity continue to be for a long period in the future, the only source of water supply to the City of Rosedale, in Wyandotte County, Kansas, and the maintenance of this supply is of vital importance to the health and property protection of the citizens of said municipality; and

"Whereas, The contour of the territory of each city is such that, to reach and serve certain districts, it is necessary that portions of the service mains and plants occupy or run through the territory of the other State; and

"Whereas, Kansas City, Missouri, is about to invest many millions of dollars in the betterment of its plant in the immediate future, and the City of Kansas City, Kansas, will invest in the future large sums in extending its plant; said extensions of each municipality necessitate large investments in the territory of the adjacent state, and to raise the funds for the purpose of making these investments it is vital to each city that each plant be free from assessment and taxation in the other state:

"Now, Therefore, by reason of the advantages accruing to the municipalities of each state and the inhabitants thereof hereinbefore recited, and other advantages not herein enumerated, the states of Kansas and Missouri hereby enter into the following compact and agreement:

"(1) The State of Kansas, nor any county, township or municipality located within said state, or any official thereof shall ever assess, levy or collect any taxes, assessments or imposts of any kind or character whatsoever on the portion of the waterworks plant of the municipality of Kansas City, Missouri, now or hereafter located within the territory of the State of Kansas.

"(2) That the State of Missouri, nor any county, township or municipality located within said state, or any official thereof shall ever assess, levy or collect any taxes, assessments or imposts of any kind or character whatsoever on the portion of the waterworks plant of the municipality of Kansas City, Kansas, now or hereafter located within the territory of the State of Missouri.

"The right of eminent domain for the purpose of acquiring property, rights and easements for a waterworks plant, including mains, water pipe lines or extensions, or any part thereof, in either state, is hereby given and granted to each state and to Kansas City, Kansas, and Kansas City, Missouri, and may be exercised by Kansas City, Kansas, in the State of Missouri, and by Kansas City, Missouri, in the State of Kansas, for said purposes.

"To the faithful observance of this compact and agreement each state, by the adoption of this resolution, pledges its good faith.

"This compact and agreement shall be in force and take effect from and after its passage by the House and Senate, approval by the Governor of the State of Kansas, and publication in the official state paper, and its proper adoption and approval by the legislative and executive authority of the State of Missouri, and upon its receiving the consent of the Congress of the United States of America.

"Approved March 18, 1921."

The resolution, set forth above, adopted

by the Kansas Legislature and approved by the Governor on March 18, 1921, is identical in form with a resolution adopted by the Missouri Legislature and approved by the Governor on April 15, 1921. The Congress, by Joint Resolution approved September 22, 1922 (42 Stat. 1058), gave its consent to the compact and agreement. Prior thereto the supreme court of Kansas held, in State ex rel. v. Holcomb, 85 Kan. 178, 116 P. 251, 50 L. R. A. (N. S.) 243, Ann. Cas. 1912D, 800, that the exemption from taxation of the property of the State and its municipalities provided for in the Kansas constitution and statutes did not apply to property owned by a municipality of another State, that Kansas City, Mo., as a property owner in Kansas, had no greater rights than a private owner, and its property in Kansas was subject to taxation. After the compact and agreement became effective the State of Kansas, on relation of the County Attorney for Wyandotte County, brought an original proceeding in mandamus in the supreme court of that State to compel the taxing officers of that county to levy and collect taxes against the waterworks plant of Kansas City, Mo., located therein, on the ground that the exemption provided for in the compact and agreement was unconstitutional. The writ was denied. State ex rel. v. Joslin, 116 Kan. 615, 227 P. 543. The court, in disposing of the matter, said:

"The state constitution exempts property of various kinds from taxation, such exemptions being 'justified * * * upon the theory of peculiar benefits received by the state from the property exempted.' Washburn College v. County of Shawnee, 8 Kan. 344, 349. The enlargement of these exemptions by the Legislature is not expressly forbidden and is upheld where the same condition is met, that is, where the property exempted benefits the public in a way different from other property (Wheeler v. Weightman, 96 Kan. 50, 60, 61, 149 P. 977, L. R. A. 1916A, 846), and the legislative power is not 'used in such a way as to introduce a system of taxation substantially different from that contemplated by the constitution.'"

The court then, after setting forth the recital of facts preceding the resolution on which its adoption was based, said further:

"By the action referred to the Kansas Legislature has in effect declared that upon the grounds indicated the exemption of the waterworks plant in Wyandotte County, owned by the City of Kansas City, Mo., is of peculiar public benefit. This decision of the legislature, having been made in the exercise of its proper functions and being based upon grounds that the court cannot pronounce to be capricious or without foundation in reason, is beyond judicial interference."

While that case presumably dealt only with general taxes, nothing is said in the opinion that indicates a belief that the exemption extended only to that character of taxation. It had previously held, in Chicago Great Western Ry. Co. v. Kansas City North Western R. Co., 75 Kan. 167, 88 P. 1085, 12 Ann. Cas. 588, as stated in the syllabus, that:

"The word 'taxes' has two well-recognized meanings, one inclusive and the other exclusive of special assessments for local improvements. Which meaning is intended where the word is used in a written contract must be determined by the context."

See also Rogers v. Dockstader, 90 Kan. 189, 133 P. 717, 4 A. L. R. 663.

In Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 126, 17 S. Ct. 56, 69 (41 L. Ed. 369), the court said:

"Although there is a marked distinction between an assessment for a local improvement and the levy of a general tax, yet the former is still the exercise of the same power as the latter, both having their source in the sovereign power of taxation."

Still if the compact and agreement in granting the exemption had used only the word "taxation," or "taxes," it might be seriously doubted whether the claimed exemption from the assessments in this case could be sustained. Illinois Central R. R. v. Decatur, 147 U. S. 190, 13 S. Ct. 293, 37 L. Ed. 132. But here the numbered paragraphs 1 and 2 of the compact and agreement leave no doubt in our minds that it was clearly the purpose to exempt also the properties of each city in the other State from assessments for local improvements—shall never "assess, levy or collect any taxes, assessments or imposts of any kind or character whatsoever on the portion of the waterworks plant of the municipality of Kansas City, Mo., now or hereafter located within the territory of the State of Kansas"; and likewise as to the waterworks plant of Kansas City, Kan., within the State of Missouri. This conclusion, we think, is strengthened and fortified by the preceding recitals, particularly: "Said extensions of each municipality necessitates large investments in the territory of the adjacent state, and to raise the funds for the purpose of making these investments it is vital to each city that each plant be free from assessment and taxation in the other state." The word "assessments," when used

as here, has been held to mean assessments for special benefits. Patterson v. Chicago, R. I. & P. Ry. Co., 99 Minn. 454, 109 N. W. 993; Insurance Co. v. Butler, 57 Neb. 198, 77 N. W. 667; Id., 61 Neb. 449, 85 N. W. 437, 87 Am. St. Rep. 462; In re Jerome Avenue, 192 N. Y. 459, 85 N. E. 755; Cooper Hospital v. City of Camden, 68 N. J. Law, 208, 52 A. 210; Milwaukee Electric Ry. & Light Co. v. Milwaukee, 95 Wis. 42, 69 N. W. 796. We cannot find any other purpose that would be served by the use of the word "assessments" and the comprehensive language that follows it in paragraphs 1 and 2 of the compact and agreement. There would have been exemption from general taxation if that word had been omitted.

■ Perhaps the most forceful insistence of appellee's counsel is, that there is no exemption from assessments for local improvement by a drainage district, "drainage district" is not named in paragraphs 1 and 2 and is not included in "municipality" as that word is ordinarily defined. In considering the point it is well to keep in mind that the compact and agreement was not made by the political subdivisions of the two States. It was made by the States that created them and had plenary power over them, and if they clearly expressed in the compact and agreement their intention and purpose to exempt from these assessments the subdivisions of every kind and character are bound. Speaking of towns and counties, applicable also to drainage districts, the court, in Laramie County v. Albany County, 92 U. S. 307, 312 (23 L. Ed. 552), said: "They are but subdivisions of the state, deriving even their existence from the legislature. Their officers are nothing more than local agents of the state; * * *" and by the express terms of the compact and agreement the officers of each state and of its municipalities are prohibited to ever assess, levy or collect any taxes or assessments of any kind or character whatsoever on the waterworks plant of the municipality of the other State. In Illinois Central Ry. Co. v. Decatur, supra, pages 203, 204 of 147 U. S. (13 S. Ct. 293), the holding of the Illinois supreme court that the exemption there under consideration extended to all general municipal taxation, was approved; although no municipality or other subdivision of any kind was named in the Act which granted the exemption. This was put upon the ground that the Act provided that it should be favorably construed for all purposes expressed in it. Attentive reading of the whole of the compact and agreement, with a mind free from narrow technical ob-

jections, leaves no doubt that it was the intention of the two States to exempt from taxation and assessments of every kind and character whatsoever, and to its faithful observance each State pledged its good faith. An obligation of fidelity extends not only to things expressed, but equally so to those that are implied. It is not believable the two States would otherwise deal with each other.

■ But let us see whether this specific contention for appellee, that a drainage district is not included in "municipality," as here used, is tenable. The statute of Kansas on drainage districts denominates a drainage district a body politic and corporate and gives it broad powers—to adopt a seal; sue and be sued in its corporate name; purchase, hold, sell and convey such real and personal property as may be deemed necessary or convenient to enable it to properly carry on the purposes of its organization; to exercise the right of eminent domain; to maintain in any court of competent jurisdiction suits to enforce the reasonable orders of its directors; to annually levy and collect a general tax not exceeding five mills on the dollar on all taxable property within the district, to create a general fund; to levy assessments and special taxes if deemed expedient by the directors, upon all of the real estate in the district that may be benefited, to defray the cost of the construction and maintenance of levees or other works or improvements to prevent the overflow of natural water courses or the drainage of overflowed lands therein, or that may be conducive to the public health, convenience or welfare; to issue negotiable bonds to pay the cost of such structures when authorized by vote of the taxpayers; to make all contracts and do all other acts in relation to the affairs of the district necessary to the proper exercise of its corporate, legislative or administrative powers and to the accomplishment of the purpose of its organization; to do all other acts that may be necessary to execute the general powers to it granted, although not specifically enumerated. A petition signed by the requisite number of taxpayers residing within the boundaries of a proposed district must be presented to the board of county commissioners and it becomes incorporated and organized on favorable action by the board. The district has a board of directors and officers who direct and control its action. Under some contingencies improvements made are to be paid for by general taxation, under others the cost of such improvements are to be met by levying special assessments upon all the real estate in the district that will

be benefited thereby. These assessments may at the direction of the board be paid in installments to meet maturing bonds issued for the cost of the improvement. The directors are allowed compensation for their services. Drainage districts in Missouri, and their statutory power, functions, duties and character of organization, are much like those of Kansas. In State ex rel. v. Little River Drainage District, 291 Mo. 72, 236 S. W. 15, it was held, after considering the statutes of that State under which drainage districts were organized and the powers granted to them, that they were municipal corporations. Again, in State ex rel. v. Little River Drainage District, 291 Mo. 267, 236 S. W. 848, it was held that drainage districts in that State exercised governmental functions and are municipal corporations within the meaning and purpose of the constitutional provision exempting counties and other municipal corporations from taxation. In State ex rel. Road District v. Thompson, 315 Mo. 56, 285 S. W. 57, 61, that court said:

"The district [road] when organized is a municipal corporation, not in the limited sense applied to certain cities, but in the general sense in that it exercised governmental functions. It is a political subdivision of the State."

The statutes did not declare a drainage district or road district to be a municipal corporation, in express terms, but to be a corporation for public purposes. How stands the compact and agreement, then, with Missouri? Clearly, the word "municipality" would, under the authorities cited, include a drainage district.

In State ex rel. v. Bismarck Drainage District, 102 Kan. 575, 171 P. 634, the Kansas supreme court said this:

"The drainage districts provided for in the Act are municipal corporations, and their officers are vested with many important functions, including the condemnation of private property for a public purpose and the levy of taxes on the property within the district."

In State ex rel. v. Drainage District, 123 Kan. 191, 254 P. 372, 373, that court said: "While drainage districts are not mentioned in our Constitution, it has been held that a drainage district is properly classified as a quasi-municipal corporation." Under the Kansas statute a city is denominated a body politic and corporate. Of course, the strict definition of "municipality" includes only cities and towns, political organizations exercising to some degree the powers of self-government, but it frequently has a broader meaning when viewed with the context.

Counties and townships do not come within the strict definition. But in Haddock v. McDonald, 98 Kan. 628, 159 P. 402, the question was whether a county was subject to garnishment. The Kansas Legislature had exempted municipal corporations from garnishment, and it was held that under that statute counties and similar bodies were also exempt. In Rathbone v. Hopper, 57 Kan. 240, 45 P. 610, 34 L. R. A. 674, that court had under consideration an act entitled: "An act to enable counties, municipal corporations, the boards of education of any city and school districts, to refund their indebtedness." Laws Kan. 1879, c. 50. It was held that the term "municipal corporations" in the title included townships. In the discussion it was said: "In this state, each organized township is a body politic and corporate, with power to make all contracts that may be necessary and convenient for the exercise of its corporate powers, and, in its proper name, may sue and be sued. A township is generally spoken of as a municipality or municipal corporation. * * *" It was further said in that case that a township as an organization was on the same plane as counties and school districts. On this point it is our conclusion that drainage districts of each State are included in "any municipality," as those words are found in numbered paragraphs 1 and 2.

■ Appellee also relies on this clause in the Kansas statute (Rev. St. Kan. 1923, 24—434): "* * * And no suit to set aside any general or special tax or assessment or to enjoin the making or collection of any assessment or installment thereof, and no defense of any kind to the validity of any improvement bond or assessment to pay the same, shall be allowed unless brought within thirty days after the confirmation of the assessor's report." The Supreme Court of Kansas answered this claim in the negative in Randall v. Arkansas City, 114 Kan. 178, 217 P. 298, when it ruled that the thirty-day limitation does not apply to a special assessment where there is no authority whatever to make it and it is entirely illegal.

■ The defendant also challenged by its demurrer plaintiff's right to maintain this suit. The action is said to be in assumpsit, and personal service could have been had on defendant through one of its agents in charge of its waterworks plant in Kansas. Baker v. Kansas City, Missouri, 118 Kan. 27, 233 P. 1012. However, it entered its general appearance when it filed its demurrer without reservation. It seems to be the rule in Kansas and elsewhere that assessments for special

benefits on property held in and devoted to public use—courthouses, schoolhouses, fire-stations, etc.—may be recovered only in this way, because of great public detriment if the property should be sold. City of Wichita v. Board of Education, 92 Kan. 967, 142 P. 946; 23 C. J., p. 355. If we accept the statement of facts which induced the making of the compact and agreement as disclosing the true situation, and we think we should, there is strong reason for application of the rule stated. Kansas City, Kansas, has a large population which must rely in part on occasion for water service from defendant's plant, and in emergencies that plant may become its only source of supply. The City of Rosedale Kansas, is exclusively served by it. To dismember and destroy the plant by selling under the claimed assessment lien the part in Kansas, which includes the intake works and appliances therewith for the whole system, would be a public misfortune to a considerable part of the population of Kansas, a menace to health and property. But in view of what has been said on the subject of exemption, we have no occasion to pass on the question of defendant's personal liability, nor, whether under the statute this action could be brought only by Wyandotte County or its collector of taxes, rather than by the drainage district.

The judgment is reversed with directions to vacate it and to sustain defendant's demurrer to the complaint.

PHILLIPS, Circuit Judge (dissenting). I respectfully dissent from the construction placed upon the compact by the majority opinion and shall undertake to state my reasons therefor. Kansas City, Missouri, will be referred to as the city and the Fairfax Drainage District of Wyandotte County, Kansas, as the district.

An exemption from taxation must be in clear and unambiguous language and appear to be indisputably within the intention of the legislative body. Philadelphia & W. R. Co. v. Maryland, 10 How. (51 U. S.) 376, 393 (13 L. Ed. 461); Tennessee v. Whitworth, 117 U. S. 139, 145, 6 S. Ct. 649, 29 L. Ed. 833; McQuillin on Municipal Corporations (2d Ed.) vol. 5, § 2215.

Immunity from taxation will not be allowed unless granted in words too plain to be mistaken. Phœnix F. & M. Ins. Co. v. Tennessee, 161 U. S. 174, 177, 16 S. Ct. 471, 40 L. Ed. 660; Bank of Commerce v. Tennessee, 163 U. S. 416, 423, 16 S. Ct. 1113, 41 L. Ed. 211.

Both constitutional and statutory exemptions from taxation are strictly construed and any doubt is resolved in favor of the public and against the property owner claiming exemption thereunder. Tucker v. Ferguson, 22 Wall. 527, 575, 22 L. Ed. 805; Covington & L. Turnpike R. Co. v. Sandford, 164 U. S. 578, 586, 587, 17 S. Ct. 198, 41 L. Ed. 560; Seton Hall College v. Village of South Orange, 242 U. S. 100, 106, 37 S. Ct. 54, 61 L. Ed. 170; Ford v. Delta & Pine Land Co., 164 U. S. 662, 666, 17 S. Ct. 230, 41 L. Ed. 590; Kansas City Exposition Driving Park v. Kansas City, 174 Mo. 425, 74 S. W. 979, 981; Stahl v. Kansas Educational Ass'n of M. E. Church, 54 Kan. 542, 38 P. 796; Cooley on Taxation, vol. 2, § 672; McQuillin on Municipal Corporations (2d Ed.) vol. 5, § 2215, p. 696.

In a broad sense, taxes may be said to include special assessments for local improvements since the right to impose such assessments has its foundation in the taxing power; but, as generally understood, there is a clear distinction between the two terms and ordinarily such assessments are not included in the terms "taxes" or "taxation." Drainage Dist. No. 1 of Bates County v. Bates County, 269 Mo. 78, 189 S. W. 1176, 1177; Sullivan v. Blakesly, 35 Wyo. 73, 246 P. 918, 922; Elliott v. McCrea, 23 Idaho, 524, 130 P. 785, 786; Schmidt v. Schmidt, 80 N. J. Eq. 364, 84 A. 629, 632.

Exemptions from taxes or taxation, either by constitution or statute, do not embrace exemptions from local assessment or special taxation. Sheehan v. Good Samaritan Hospital, 50 Mo. 155, 11 Am. Rep. 412; School Town of Windfall City v. Somerville, 181 Ind. 463, 104 N. E. 859, 860, Ann. Cas. 1916D, 661; City of Wichita v. Board of Education, 92 Kan. 967, 142 P. 946; City of Kalispell v. School Dist., 45 Mont. 221, 122 P. 742, 744, Ann. Cas. 1913D, 1101; Wesley M. E. Church v. Columbia, 105 S. C. 303, 89 S. E. 641; Williams College v. Williamstown, 219 Mass. 46, 106 N. E. 687, 688; Corrigan v. Kansas City, 211 Mo. 608, 111 S. W. 115, 118; Edwards & Walsh Const. Co. v. Jasper County, 117 Iowa, 365, 90 N. W. 1006, 1011, 94 Am. St. Rep. 301; Louisville v. McNaughten, 44 S. W. 380, 19 Ky. Law Rep. 1695; Town of Franklinton v. Police Jury, 126 La. 2, 52 So. 172; Beatrice v. Brethren Church, 41 Neb. 358, 59 N. W. 932, 933; Buffalo City Cemetery v. Buffalo, 46 N. Y. 506, 509; Whittaker v. Deadwood, 23 S. D. 538, 122 N. W. 590, 591, 592, 139 Am. St. Rep. 1076; Wey v. Salt Lake City, 35 Utah, 504, 101 P. 381, 382; Chicago v. Bap-

tist Theological Union, 115 Ill. 245, 2 N. E. 254, 255–257; Illinois Cent. R. Co. v. Decatur, 147 U. S. 190, 197–202, 13 S. Ct. 293, 37 L. Ed. 132; New Orleans v. Warner, 175 U. S. 120, 138, 139, 20 S. Ct. 44, 44 L. Ed. 96; McQuillin on Municipal Corporations (2d Ed.) vol. 5, § 2215, p. 696.

In Sheehan v. Good Samaritan Hospital, supra, the court, at page 158 of 50 Mo., said:

"We think the judgment of the court below was clearly right. The taxation from which the defendant was exempted was for the ordinary taxes raised for the purposes of revenue. Taxes are charges or burdens imposed by the legislative power upon persons or property to raise money for public purposes, or to defray the necessary expenses in administering the government, and it was from taxes of this description that the Legislature intended to exempt defendant's property. The tax bill here sued on is not regarded as a tax, but as an assessment for improvements, and is not considered as a burden, but as an equivalent or compensation for the enhanced value which the property derives from the improvement. This question is well settled both in this state and elsewhere."

From the foregoing authorities, it seems to me there can be little doubt that the word "taxes," in the compact, did not include special assessments for local improvements.

However, counsel for the city contend that the language "assessments * * * of any kind or character whatsoever" includes special assessments for local improvements, such as are here involved.

The word "assessment," in its general sense, means the quasi-judicial tax proceedings by which the name of the owner, the description of the property, the value thereof and the pro rata to be collected thereon is determined and set forth by the assessing officers on the tax rolls. It is the statutory mode by which general taxes are imposed. United States v. Erie Ry. Co., 107 U. S. 1, 2 S. Ct. 83, 27 L. Ed. 385; Chicago & N. W. Ry. Co. v. Forest County, 95 Wis. 80, 70 N. W. 77, 79; Wason v. Major, 10 Colo. App. 181, 50 P. 741, 743; Urquhart v. Wescott, 65 Wis. 135, 143, 26 N. W. 552, 556; People ex rel. N. Y. C. & H. R. R. Co. v. Priest, 169 N. Y. 432, 435, 62 N. E. 567; 5 C. J. 816, § 2. True, in a more limited sense, it means the mode by which taxes for benefits on account of local improvements are imposed, upon the property benefited, for the purpose of raising funds with which to pay for such improvements. 5 C. J. p. 819, § 3. The burden thus imposed is not generally referred

to as an "assessment" but rather as a "local assessment" or "special assessment." 5 C. J. p. 819, § 3, 38 C. J. p. 129; Whitmore v. Hartford, 96 Conn. 511, 114 A. 686, 691; Chicago v. Baptist Theological Union, 115 Ill. 245, 2 N. E. 254, 256; Huston v. Mayo, 120 Miss. 523, 82 So. 334, 335.

An impost, in its usual sense, means a duty on imports. Bouvier's Law Dictionary, vol. 2, p. 1514. In its broader sense, it means any public tax. City of Madera v. Black, 181 Cal. 306, 184 P. 397, 400.

In determining whether the parties to the compact used the phrase "taxes, assessments or imposts" in the sense of local or special assessments for local improvements as well as general taxes, we have a right to take into consideration the situation of the parties and the reasonableness of such construction. In Pressed Steel Car Co. v. Eastern Ry. Co. (C. C. A. 8) 121 F. 609, 611, Circuit Judge Sanborn, writing the opinion of the court, said:

"* * * The court should, as far as possible, put itself in the place of the parties when their minds met upon the terms of the agreement, and then, from a consideration of the writing itself, its purpose, and the circumstances which conditioned its making, endeavor to ascertain what they intended to agree to do—upon what sense or meaning of the terms they used their minds actually met. * * *

"Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract."

Special assessments while in the nature of taxation, must be based upon benefits accruing to property by reason of local improvements. 19 C. J. p. 720, § 218; Id. p. 731, § 232. The burden of such taxes always falls upon a limited few, namely, the owners of the property benefited by such improvements. If one or more of such number is exempt, the burden necessarily falls upon the remainder out of proportion to the cost of such improvements and the benefits accruing to their property. Illinois C. R. R. Co. v. Decatur, supra, pages 202, 203, of 147 U. S. (13 S. Ct. 293). Due to this fact, it has not

been the policy of the states to exempt property from special assessments for local improvements. The property of counties, townships and municipalities is usually exempt from general taxation but seldom from special assessments for local improvements. See cases cited note 72, p. 696, vol. 5 (2d Ed.) McQuillin on Municipal Corporations.

At the time the compact was entered into, the property of the city was not exempt in Missouri from special assessments for local improvements. Drainage Dist. v. Bates County, 269 Mo. 78, 189 S. W. 1176; Houck v. Little River Drainage Dist., 248 Mo. 373, 154 S. W. 739. Likewise, property of Kansas City, Kansas, was not exempt from special assessments for local improvements in the state of Kansas. Hines v. City of Leavenworth, 3 Kan. 186; City of Wichita v. Board of Education, 92 Kan. 967, 142 P. 946; Commissioners of Franklin County v. City of Ottawa, 49 Kan. 747, 31 P. 788, 33 Am. St. Rep. 396. It would be an unusual circumstance for a state to place public utility property within its borders, belonging to a city of a foreign state, in a more advantageous position, with reference to special assessments for local improvements, than its own cities, towns and villages.

In the year 1911, the Supreme Court of Kansas held that the waterworks property of the city situated within the state of Kansas was subject to general taxation. State v. Holcomb, 85 Kan. 178, 116 P. 251, 50 L. R. A. (N. S.) 243, Ann. Cas. 1912D, 800. At the time the compact was entered into, the property of Kansas City, Kansas, and of the city were exempt from general taxation within their respective states. Constitution of Missouri, art. 10, §§ 6 and 7; Constitution of Kansas, art. 11, § 1.

It is reasonable to suppose that the purpose of the compact was to avoid the effect of the decision in State v. Holcomb, supra, and to place the city, as respects its property situate in the state of Kansas, in a position of equality with the cities of Kansas in matters of general taxation, and not to place the city, as respects such property, in a more favored position than the cities of Kansas as to special assessments for local improvements.

Exactions authorized to be made by a drainage district, whether in the form of special assessments or in the form of taxes, are essentially assessments for local improvements (Sullivan v. Blakesley, 35 Wyo. 73, 246 P. 918, 922; In re Bonds of Orosi Public Utility District, 196 Cal. 43, 235 P. 1004, 1008; Huston v. Mayo, 120 Miss. 523, 82 So.

334, 335; Lainhart v. Catts, 73 Fla. 735, 75 So. 47, 52; Drainage Dist. v. Bates County, 269 Mo. 78, 189 S. W. 1176, 1177; Munn v. Board of Supervisors of Greene County, 161 Iowa, 26, 141 N. W. 711, 715; Billings Sugar Co. v. Fish, 40 Mont. 256, 106 P. 565, 572, 573, 26 L. R. A. (N. S.) 973, 20 Ann. Cas. 264; Carlyle v. Bartels, 315 Ill. 271, 146 N. E. 192, 193; Lake Arthur Drainage Dist. v. Board of Commissioners of Chaves County, 29 N. M. 219, 222 P. 389; Booth v. Clark, 42 Idaho, 284, 244 P. 1099, 1100, 1101; 19 C. J. p. 714), and must be based upon benefits (Madsen v. Bonneville Irr. Dist., 65 Utah, 571, 239 P. 781, 783; Myles Salt Co. v. Board of Commissioners, 239 U. S. 478, 36 S. Ct. 204, 60 L. Ed. 392; 19 C. J. p. 720, § 218; Id. p. 731, § 232).

The language of the exemption clause is: "[Neither] the state of Kansas, nor any county, township or municipality * * * or any official thereof shall ever assess, levy or collect any taxes, assessments or imposts of any kind or character whatsoever." This language, as I shall hereinafter undertake to show, limits the exemption to taxes, assessments and imposts assessed and levied by the state of Kansas or by a county, township, city, town or village thereof, or by the respective officials thereof. Therefore, it includes the state and all the public or quasi-public corporations thereof, which have power to levy and assess general taxes, and it omits certain public corporations such as drainage districts, irrigation districts and the like, which may assess only special assessments for local benefits or improvements. The failure to include these quasi municipal corporations, which may levy only special assessments for local benefits or improvements, forcibly indicates that the contracting parties, when drafting the exemption provisions of the compact, had in mind only general taxes.

Therefore, it is my opinion that the contracting parties employed the words "taxes, assessments or imposts" as practically synonymous with each other and with the purpose of covering all manner of public exactions in the nature of general taxes; that special or local assessments were not within their contemplation at the time the compact was entered into, and that it was their intention to grant immunity only from assessment, levy and collection of general taxes.

However, assuming that the language of the compact is broad enough to include an exemption from special assessments for local improvements, the question remains: Does

the word "municipality," as employed in the compact, include drainage districts?

"Municipality," in its proper sense, includes only cities, towns, and villages. State v. Little River Drainage Dist., 291 Mo. 267, 236 S. W. 848, 850, 851; Freeland v. Stillman, 49 Kan. 197, 30 P. 235, 236; D'Arcourt v. Little River Drainage Dist., 212 Mo. App. 610, 245 S. W. 394, 396; Levy Court of Washington County v. Woodward, 2 Wall. 501, 17 L. Ed. 851; Nakdimen v. Ft. Smith & Van Buren Bridge Dist., 115 Ark. 194, 172 S. W. 272, 274; O'Leary v. Board of Fire & Water Commissioners, 79 Mich. 281, 44 N. W. 606, 608, 609, 7 L. R. A. 170, 19 Am. St. Rep. 169; Thaanum v. Bynum Irrigation Dist., 72 Mont. 221, 232 P. 528, 530; Hanson v. Cresco, 132 Iowa, 533, 538, 109 N. W. 1109, 1111, 1112; 43 C. J. p. 74.

In its broad or generic sense, it may also include counties, townships, school districts, drainage districts, irrigation districts and the like, which are quasi municipal corporations. In re Bonds of Orosi Public Utility Dist., 196 Cal. 43, 235 P. 1004, 1010; Hanson v. Cresco, supra, page 1112 of 109 N. W. (132 Iowa, 533); 43 C. J. p. 74.

Counsel for the city contend that the word "municipality," in the tax exemption clause of paragraphs numbered 1 and 2 of the compact, is used in its broad or generic sense so as to include both municipal corporations proper and also quasi municipal corporations. On the other hand, counsel for the district contend that the word "municipality" is there used in its proper or restricted sense and that it includes only cities, towns and villages.

Paragraph numbered 1 of the compact reads as follows:

"(1) [Neither] the state of Kansas, nor any county, township or municipality located within said state, or any official thereof shall ever assess, levy or collect any taxes, assessments or imposts of any kind or character whatsoever on the portion of the waterworks plant of the municipality of Kansas City, Missouri, now or hereafter located within the territory of the state of Kansas."

Paragraph numbered 2 of the compact, by identical language, creates the same exemption in favor of the waterworks plant of Kansas City, Kan., located in the state of Missouri.

An application of the doctrine of "ejusdem generis" to the clause "The state * * * nor any county, township, or municipality," etc., would include quasi municipal corporations such as counties, townships and drainage districts and exclude mu-nicipal corporations proper such as cities, towns and villages. I do not think the doctrine of ejusdem generis should be applied here. It is usually applied to limit and not to expand the meaning of the general words used. Lewis' Sutherland, Statutory Construction (2d Ed.) vol. 11, §§ 422 to 434, inc. If this doctrine were applied to the language here under consideration, the word "municipality" would be expanded to its broadest sense, namely, to include quasi municipal corporations, the general character of the subjects specifically enumerated in the language which precedes the word "municipality," and it would be limited so as to exclude cities, towns and villages, municipalities proper, which are not of the same general class as the subjects specifically enumerated. Furthermore, to apply the doctrine here, it would be necessary to read into the clause under consideration, after the word "or" and before the word "municipality," the word "other."

Under the maxim of "expressio unius est exclusio alterius," the express enumeration of county and township, which are quasi municipal corporations, manifests an intent to exclude all other quasi municipal corporations. Lewis' Sutherland, Statutory Construction (2d Ed.) vol. 11, §§ 491 to 494, inc.; 25 C. J. p. 220. This rule was applied to language substantially identical with the language of the clause here under consideration by the Supreme Court of Kansas in the case of Freeland v. Stillman, 49 Kan. 197, 30 P. 235, 236. The language of the statute there under consideration, read as follows: "Wherever any elector or electors of any county, township, or municipal corporation in this state," etc. The question presented was whether the phrase "municipal corporation" included school districts, and the court said:

"Although a school district possesses corporate capacity, and is declared in the statutes to be a body corporate, it does not fall within the definition of a municipal corporation. A school district belongs in the same class as counties and townships, which 'are denominated in the books and known to the law as quasi corporations, rather than as corporations proper. They possess some corporate functions and attributes, but they are primarily political subdivisions—agencies in the administration of civil government—and their corporate functions are granted to enable them more readily to perform their public duties.' Beach v. Leahy, 11 Kan. 23. Cities, towns, and villages are municipal corporations proper, and the distinction between

municipal corporations and quasi corporations is clearly pointed out in the case just cited. See, also, Eikenberry v. Township of Bazar, 22 Kan. 556 [31 Am. Rep. 198]; Marion Co. v. Riggs, 24 Kan. 255; Dill. Mun. Corp. § 20; 15 Amer. & Eng. Enc. Law, 952. It is said that, in the broader sense, municipal corporations include all public corporations, including quasi corporations, such as counties, townships, and school districts, and the title of the act is referred to as an evidence that this signification was intended by the Legislature. The fact, however, that counties and townships were specifically named in connection with municipal corporations, forbids such an interpretation, and shows clearly that it was not the intention of the Legislature that municipal corporations should include quasi corporations like counties, townships and school districts. If the Legislature had intended that the term 'municipal corporations' should be extended in its meaning so as to embrace all quasi corporations, counties and townships would not have been mentioned; and, having named these, it is evident that the Legislature intended to exclude all other quasi corporations."

Likewise, in the instant case, by specific enumeration of counties and townships, the parties to the compact must have intended to exclude other like quasi municipal corporations, unless we are to imply the word "other" or the words "other like," so that the sentence would read, "neither the state of Kansas nor any county, township or 'other'/'other like' municipality." If this had been the sense intended, ordinarily the drafters of the compact would have said, "any county or other municipality" and would have omitted the word "township."

It seems to me, therefore, that the specific enumeration of counties and townships and the omission of the word "other" manifest an intention, on the part of the drafters of the compact, to exclude all quasi municipal corporations other than counties and townships and to employ the word "municipality" in its proper sense in contradistinction to its generic sense.

There is another rule of construction which, if applied, forbids a construction of the word "municipality" in its broad or generic sense. Words used in one sense in one part of a contract, as a general rule, are deemed to have been used in the same sense in another part of the instrument, where there is nothing in the context to indicate otherwise. 13 C. J. 532, § 491; Pringle v. Wilson, 156 Cal. 313, 104 P. 316, 24 L. R. A.

(N. S.) 1090; Maupin v. So. Surety Co., 205 Mo. App. 81, 220 S. W. 20; Chicago Home for Girls v. Carr, 300 Ill. 478, 133 N. E. 344; Lyon v. Gray (Tex. Civ. App.) 288 S. W. 545.

The word "municipality" occurs three times in the compact preceding paragraphs numbered 1 and 2. It occurs also in paragraphs numbered 1 and 2 in the sentence of which the clause now under consideration is a part and in each of these five instances the context shows unmistakably that it is employed in its restricted or proper sense. It must be deemed to have been used in the same sense in the clause under consideration, unless the context there indicates otherwise. The context, for the reasons above stated, does not indicate otherwise, but rather points to the use of the word "municipality" in its proper sense.

It is my conclusion that the exemption applies only to the state and any county, township, city, town or village thereof. It follows that the compact did not exempt the city from the special assessments levied by the district.