## SETON HALL COLLEGE *v.* VILLAGE OF SOUTH ORANGE ET AL.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW JERSEY.

No. 74.   Submitted November 3, 1916.—Decided December 4, 1916.

Nine years after the incorporation and establishment of a college under
    special charter, a supplemental act declared that its property should
    be exempt from taxation.   Long afterward, a general tax law was
    passed repealing all general and special acts inconsistent with its
    terms, and thereunder a portion of the college property, consisting
    of farm buildings and pasture land, necessary for its use but not
    productive of income, was assessed for taxation.   No previous at-
    tempt had been made to tax any part of its property.   The college,
    however, entered upon no new undertaking when the exemption
    was given, nor promised nor parted with anything because of it.
    Furthermore, there was in force at that time a law providing that
    every charter to be granted should be subject to alteration, suspen-
    sion or repeal in the discretion of the legislature.
*Held:* (1) That it was reasonable to assume that the exemption was
    extended subject to the right of alteration and repeal. *New Jersey*
    v. *Yard*, 95 U. S. 104, distinguished.
(2) That, in view of this and the apparent absence of any promise made
    or burden assumed in reliance on the exemption, this court was not
    prepared to hold that the state court erred in holding the exemption
    a revocable privilege. *Home of the Friendless* v. *Rouse*, 8 Wall. 430,
    and *University* v. *People*, 99 U. S. 309, distinguished.
In determining whether there is a contract which has been impaired
    by subsequent legislation, this court, though exercising its right of
    independent examination, accords much consideration and respect
    to the decision of the state court construing the state statutes in-
    volved in the inquiry.
To all claims of contract exemption from taxation must be applied the
    well settled rule that, as the power to tax is an exercise of the sover-
    eign authority of the State, essential to its existence, the fact of its
    surrender in favor of a corporation or an individual must be shown
    in language which cannot be otherwise reasonably construed, and

all doubts which arise as to the intent to make such contract are to be resolved in favor of the State.

86 N. J. L. 365, affirmed.

THE case is stated in the opinion.

*Mr. William J. Kearns* for plaintiff in error.

*Mr. Adrian Riker* for defendants in error.

MR. JUSTICE DAY delivered the opinion of the court.

This is a writ of error to the Supreme Court of New Jersey, seeking to reverse a judgment of that court, which judgment was affirmed by the Court of Errors and Appeals of New Jersey (86 N. J. L. 365) and the record remitted to the Supreme Court. The case involves the validity of a tax levied by the assessor of the Village of South Orange, for the year 1911, the contention being that the act of the legislature of New Jersey of March 16th, 1870, hereinafter referred to, constituted a contract which could not be repealed by subsequent legislation without doing violence to the contract clause of the Constitution of the United States.

The case was heard by the Board of Equalization of Taxes of New Jersey, and by the Supreme Court of that State, upon a stipulation of facts:

"(1) Seton Hall College was incorporated under an act of the Legislature of the State of New Jersey entitled 'An Act to incorporate Seton Hall College,' Chapter 86 of the Laws of 1861, pages 198 and 199, approved March 8, 1861.

"(2) A supplement to said act was passed, being Chapter 167 of the Laws of 1870, entitled 'Supplement to an Act to Incorporate Seton Hall College', approved March 8th, 1861, which supplement was approved March 16th, 1870.

"(3) The act incorporating Drew Theological Semi-

nary of the Methodist Episcopal Church, referred to in the supplement above mentioned, was approved February 12th, 1868 (Laws of 1868, Chap. 2, p. 4).

"(4) That Seton Hall College accepted its charter contained in the Laws of 1861 aforesaid, and thereafter purchased real and personal property from time to time, erected college buildings thereon and continuously since has been and still is actively engaged in carrying out the purposes of its creation and fulfilling its obligations imposed by its said charter, and has been and is exercising all the powers granted by said charter.

"(5) After the supplement to its charter was passed in 1870, Seton Hall College accepted the same, and purchased further lands and erected further buildings, and has continued ever since to live up to the terms of both acts and carry out the purposes of its creation, and has been and is exercising all the powers granted thereby.

"(6) That the lands in question with other lands were acquired by the College by a conveyance dated the 17th day of October, Eighteen Hundred and Sixty-four, and recorded in the office of the Register of the County of Essex on the 21st day of February, Eighteen Hundred and Sixty-five, in Book M-12 of Deeds for said County on page 343.

"(7) That no assessment or tax has been levied or imposed upon the property, real and personal, of Seton Hall College from the date of its original charter in 1861, down to the year 1911; and the tax in question, imposed in the year 1911, is the first tax imposed or attempted to be imposed upon the property of said Seton Hall College, real or personal."

From the act of 1861, under which Seton Hall College was incorporated, it appears that the object of the incorporation is the advancement of education, and that the corporation was given the right to have and possess the authority to confer academic and other degrees granted

by other colleges in the State.   The act of 1870, referred
to in the stipulation, extended to Seton Hall College the
privileges which were granted to Drew Theological Semi-
nary, in relation to the exemption of real and personal
property of the corporation from assessment and taxa-
tion.   The act incorporating the Drew Theological Semi-
nary provided that the property of the corporation, real
and personal, should be exempt from assessment and
taxation.   In 1875 the constitution of New Jersey was
amended so as to provide that property should be assessed
for taxation under general laws and uniform rules, accord-
ing to its true value.   In 1903, the legislature passed a
taxation law (4 N. J. Comp. Stat. 5079), which pro-
vided that all property not therein expressly exempted
should be subject to taxation, and that all acts, general
and special, inconsistent with its provisions, were repealed.

It appears that the lands so assessed are not those upon
which the college buildings are erected, but are used for
pasture lands for cows and the dwellings of the help on
the farm, and that the same are essential and necessary
to the use of the college, and that the college derives no
pecuniary profit from the lands in question.

Upon the hearing before the Board of Equalization,
the president of that body delivered an opinion, in which
it was held that the act relied upon did not purport an
intention to impose upon the State an irrepealable con-
tract obligation, but was a privilege extended to the cor-
poration by the State, and therefore subject to revo-
cation.   This opinion was adopted and affirmed by the
Supreme Court of New Jersey, and also by the Court of
Errors and Appeals.

This court has the right to determine for itself whether
there is a contract which has been impaired by subse-
quent legislation of the State.   This principle has often
been recognized and stated in decisions of this court.
While this is true, the decision of the state court, con-

struing its own statutes, is entitled to much considera-
tion and respect. *Milwaukee Electric Railway & Light
Co.* v. *R. R. Commission*, 238 U. S. 174, 182; *Interborough
Transit Co.* v. *Sohmer*, 237 U. S. 276, 284.

In this case, the stipulation of facts shows that Seton
Hall College was incorporated under an act of the legis-
lature and entered upon the discharge of its charter ob-
ligations without reliance upon any legislative authority
exempting it from taxation upon its property. When the
subsequent legislation was enacted,—nine years after,—
extending to Seton Hall College the same exemption as
was given to the Drew Theological Seminary, it entered
upon no· new undertaking, and made no agreement by
which it promised to do something, nor did it part with
anything because of the immunity thus extended to it
by the State.

It is true that this court has held that a charter contract,
express in its character, may arise from the acceptance of
and action under the terms of a charter which grants
such exemption. In this connection, much reliance is
placed by the plaintiff in error upon certain rulings of this
court; among others, in *Home of the Friendless* v. *Rouse*,
8 Wall. 430. In that case the corporation is shown to
have entered upon its duties and expended its money in
reliance upon the grant of the charter, which declared
that the property of the corporation should be exempt from
taxation, and that that grant was made for the purpose of
encouraging such undertaking and enabling the parties
engaged therein more fully and effectually to accomplish
their purpose; and it was, moreover, provided that the
sections of the act concerning corporations, which pro-
vided that the charter of every incorporation should be
subject to alteration, suspension and repeal at the dis-
cretion of the legislature, should not apply to the act
creating the Home of the Friendless. This court held
that the corporation was thus expressly withdrawn from

the authority of the general act of the legislature giving a right to alter, suspend and repeal, and that, under such circumstances, the acceptance of the charter, and the action under it and in reliance upon its terms, constituted an express contact.

So, in *University* v. *People*, 99 U. S. 309, the act of the legislature declared that the property of the Northwestern University should be *forever* free from taxation, and this court, differing from the Supreme Court of Illinois in that respect, held that the exemption applied, in view of the language used in the statute, not only to lots and lands directly used for the purposes of the institution as a school, but also to other lots, lands and property, the annual profits of which were applied to school purposes, and that the exempting authority of the legislature was not limited to real estate occupied, or in immediate use, by the university.

Furthermore, when the alleged contract exempting Seton Hall College from taxation was made, the New Jersey act of 1846 was in force, providing that:

"The charter of every corporation which shall hereafter be granted by the legislature, shall be subject to alteration, suspension, and repeal, in the discretion of the legislature."

It is true that this act of the legislature was held by this court, in the case of *New Jersey* v. *Yard*, 95 U. S. 104, not to apply to a case where it appeared, from a subsequent act of the legislature, that a contract was made by requiring of the benefited company the performance of certain acts and a formal acceptance within sixty days, otherwise the act to become wholly inoperative. In that case, the company was obligated, in consideration of the tax limitation stated in the act, to commence and do certain work within a year; in consideration whereof the tax was fixed at the rate of one-half of one per cent. This, said this court, had been a subject of disagreement, which

was adjusted, additional rights were granted, and the tax fixed as to its rate and time of commencement, and, in view of these circumstances, it did appear that it was the legislative intention to make such contract in the same manner and on the same terms of equal obligation as other contracts are made, and not to pass a statute which it could repeal under another act of the legislature. But here there being no such express obligation shown it is only reasonable, to assume that the legislature extended the immunity from taxation to Seton Hall College subject to the right of alteration and repeal reserved in the act of 1846.

To all claims of contract exemption from taxation must be applied the well settled rule that, as the power to tax is an exercise of the sovereign authority of the State, essential to its existence, the fact of its surrender in favor of a corporation or an individual must be shown in language which cannot be otherwise reasonably construed, and all doubts which arise as to the intent to make such contract are to be resolved in favor of the State. *Hoge* v. *Railroad Co.*, 99 U. S. 348, 354; *New Orleans City and Lake Railroad Co.* v. *New Orleans*, 143 U. S. 192, 195; *Wilmington & Weldon Railroad Co.* v. *Alsbrook*, 146 U. S. 279, 294; *Phœnix Insurance Co.* v. *Tennessee*, 161 U. S. 174, 179; *Yazoo &c. Railway Co.* v. *Adams*, 180 U. S. 1, 22.

Applying these principles, we are unable to conclude that the state court was wrong in finding no binding contract here. As we have said, the college was incorporated under no promise of such exemption, and could not have relied upon it in undertaking the work for which it was organized. After the privilege of the act in favor of the Drew Seminary was extended to it, it made no new promises and assumed no new burdens. It is true it has been kept in operation, and has doubtless continued and expanded its usefulness, but we fail to discover from any-

thing in this record that it would not have done so except in reliance upon the tax exemption extended to it by the legislature. By the terms of that act, the state court has held a revocable privilege was extended and no irrepealable contract was entered into. Bearing in mind our own right of independent examination of questions of this character, we are unable to say that the conclusion reached is not well founded in law and in fact.

It follows that the judgment of the state court must be
*Affirmed.*