THE MAYOR AND COUNCIL OF WILMINGTON, a Municipal Corporation of the State of Delaware, *v.* THE RIVERVIEW CEMETERY COMPANY OF WILMINGTON, DELAWARE, a Corporation of the State of Delaware.

(*January* 25, 1937.)

LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*James R. Morford,* City Solicitor, for plaintiff.

*W. Thomas Knowles* for defendant.

Superior Court for New Castle County, No. 119, March Term, 1936.

RODNEY, J., delivering the opinion of the Court:

Without prolixity certain general principles may be briefly stated:

█ An exemption from taxation must be in unambiguous language and appear clearly within the intention of the legislative body. *Philadelphia & W. R. Co. v. Maryland,* 10 *How.* (51 *U. S.*) 376, 393, 13 *L. Ed.* 461; *Tennessee v. Whitworth,* 117 *U. S.* 139, 145, 6 *S. Ct.* 649, 29 *L. Ed.* 833; *McQuillan on Mun. Corp.* (2d *Ed.*), *Vol.* 5, § 2215.

█ Statutory exemptions from taxation are strictly construed and any doubt is resolved in favor of the public and against the claimed exemption. *Tucker v. Ferguson,* 22 *Wall.* 527, 575, 22 *L. Ed.* 805; *Covington & L. Turnpike Co. v. Sandford,* 164 *U. S.* 578, 586, 17 *S. Ct.* 198, 41 *L. Ed.* 560; *Seton Hall College v. Village of South Orange,* 242 *U. S.* 100, 106, 37 *S. Ct.* 54, 61 *L. Ed.* 170; *Cooley on Taxation, Vol.* 2, § 672; *Delaware Reg. Trust Co. v. Delaware Forge & Steel Co.,* 15 *Del. Ch.* 381, 138 *A.* 620.

█ It is a general rule, recognized by the unanimity of cases, that the mere fact that lands of a cemetery company are, by its Charter to be used solely for burial purposes does not exempt such lands from assessment for local improvements.

In a broad sense assessments for local improvements may be said to be embraced within the term "taxes" since both have their foundation in the taxing power. In the United States, however, since *In re Mayor, etc., of City of New York,* 11 *Johns.* (*N. Y.*) 77, in 1814, the distinction

between "a tax" and "an assessment" as applied to local improvements has been generally recognized, but the Courts have arrived at the conclusion from different approaches. These are generally set out in a note to 35 *L. R. A.* 33.

In this case the defendant does not chiefly rely upon its exemption from liability for the local improvement by reason of its Charter provision exempting it from "taxation." It will, therefore, be unnecessary to consider those cases which treat of this specific subject, although there are many of them. It will likewise be unnecessary to consider cases such as *Proprietors of Mt. Auburn Cemetery v. Cambridge,* 150 *Mass.* 12, 22 *N. E.* 66, 4 *L. R. A.* 836, and *City of Gary v. Gary Oakhill Cemetery Ass'n,* 186 *Ind.* 446, 116 *N. E.* 741, wherein the exemption for sewer assessments on a cemetery is discussed with reference to the lack of benefit derived by the abutting land.

In the present case the exemption is from "taxation and assessment," and the defendant contends that the use of the word "assessment" is the explicit exemption from assessment for local improvement.

The use of the word "assessment" in addition to "taxes" or "taxation" in Statutes granting exemption, has been construed to cover assessments for local improvements such as sewers.

In *Proprietors of Swan Point Cemetery v. Tripp,* 14 *R. I.* 199, the exemption was from all "taxes and assessments." It was held that the word "assessments" covered local assessment for the installation of a sewer.

In *Buffalo City Cemetery v. City of Buffalo,* 46 *N. Y.* 506, the exemption was from "all public taxes, rates and assessments." The Court held that the word "public" indicated that there were private or local assessments to which the exemption would not apply, and the cost of a

local sidewalk was held not exempt. Eight years later (1879), and prompted by the cited decision, the Legislature enacted that "no tax or assessment should be levied" on land of a cemetery company used for purposes of burial. *Laws N. Y.* 1879, *c.* 310. Under this act assessments for local improvements were not sustained. *Oakland Cemetery v. Yonkers,* 63 *App. Div.* 448, 71 *N. Y. S.* 783, affirmed 182 *N. Y.* 564, 75 *N. E.* 1132. *In re City of New York,* 192 *N. Y.* 459, 85 *N. E.* 755.

In *State (Protestant Foster Home Soc., Prosecutors) v. Mayor, etc., of Newark,* 36 *N. J. Law* 478, 13 *Am. Rep.* 464, the Charter provided that certain property "shall not be subject to taxes or assessments." Under the word assessments the land was held to be exempt from assessment for local benefits. See, also, *Catholic Protectory v. Kearney Tp.,* 56 *N. J. Law* 385, 28 *A.* 1043; *District of Columbia v. Sisters of Visitation,* 15 *App. D. C.* 300.

In *State v. City of St. Paul,* 36 *Minn.* 529, 32 *N. W.* 781, the language of the exempting statute was from "all public taxes and assessments." The Court having in mind the rule that in construing a statute each word must, if possible, be given consideration, held that the word "taxes" referred to those general burdens or charges imposed upon all property for general public purposes, while the word "assessments" was used to denote the local burdens or charges imposed for local improvements.

It seems unnecessary to review all the pertinent cases involving exemptions from taxation or assessment. They are many in number, and by no means uniform. The cases are, in large measure, collected in copious notes in 8 *Br. Rul. Cas.* 179, 15 *Ann. Cas.* 349; *Ann. Cas.* 1912*A,* 1051; 35 *L. R. A.* 33; 58 *L. R. A.* 382; 71 *A. L. R.* 327.

In addition to the consideration of cases in which the exemption itself was the precise matter of decision it

may be proper to consider other provisions of the Charter having a tendency to show the intention of the Legislature as to the grant of exemption. *Section* 1 of the *Charter* provides that the estate of the lot holder "shall not be levied on, nor taken by execution, nor any process of law or equity." It is assumed from the Record that certain lots have been sold in the area covered by the attempted assessment or lien for the sewer. The lot holders are said to have in the lots a "qualified inheritance"—whatever that may mean. It is explicit that the estate of the lot holders shall not be taken by any "process of law or equity." It is difficult to conceive language of wider meaning or of greater import. When we consider that the land of the Cemetery Company is exempt from "taxation or assessment," and that the interest of the lot holder is exempt "from any process of law or equity," and when we realize that the enforcement of a sewer assessment must be against the land itself, in the nature of a rem proceeding and not a general judgment, the implication is strong that the Legislature intended the cemetery land to be exempt from assessment for local benefits.

One final suggestion must be considered. The Charter was granted and the wording of the exemption adopted in 1873, when the land was beyond the limits of any incorporated city. Did the Legislature by the use of the word "assessment" mean simply one of the normal and preliminary steps included in the ordinary levying of taxes, or was that subject covered by the word "taxation" and complete in itself, and was the word "assessment" intended to embrace something in addition thereto?

It is a well recognized canon of statutory construction that every sentence, phrase or word will, if possible, be given weight and consideration. If the word "assessment" is to be given a meaning as merely a normal or preliminary step in the ordinary levying of taxes, then the

statute is tautological and the word assessment is entirely superflous and unnecessary.

Many authorities hold that while an assessment is in some measure a tax, yet there is a distinction between "a tax" and "an assessment," and that this distinction exists in "popular acceptation, in legislative enactments and in judicial decisions." *State v. Mayor of Newark, supra.* The word "tax" is used with reference to the annual or periodic levy to discharge the general burden for public purposes. The word "assessment" is used to signify the proportionate part of a benefit received from some local improvement. The tax is a burden; the assessment represents a benefit. *Boston Asylum v. Street Commissioners,* 180 *Mass.* 485, 62 *N. E.* 961.

The foregoing would seem to be the construction to be placed on the word "assessment" unless there be merit in the argument that the Legislature did not intend to place such meaning to the word. This argument is based upon the following reasons:

(a) That at the time of granting the exemption (1873), the land was not within the limits of any incorporated town and therefore the word assessment could not be construed to apply to a local improvement.

(b) That in the year 1873 the word "assessment" had received no such meaning as it bears today, and that the Legislature cannot be presumed to have used it in its present sense.

(a) We do not think the fact that the property exempted was beyond the corporate limits of Wilmington is entitled to great weight. The agreed statement of facts says that the land was "immediately adjoining the City limits until April 14, 1893," when all of the property became included within the City. The original Charter of the defendant was a *Public Act* and printed in *extenso* as

*Chapter* 486, *Vol.* 14, *Laws of Delaware, Page* 484. In it the Legislature recited that a certain tract of land had already been purchased and devoted to uses as a cemetery. It is a coincidence that on March 28, 1893, with the language of the original Charter available as a *Public Act,* that the Legislature renewed the Charter in its existing language, and two weeks later took steps to include all the property within the City limits of Wilmington.

(b) Was the word "assessment," as applied to local improvements, unknown to the Legislature in 1873? Without attempting a more exhaustive examination it is shown by the briefs in this case that in the following instances the Legislature used the word "assessments" as indicative of a flat proportionate integral charge for a local improvement, and as distinguished from an annual or periodic tax for general purposes.

In 1861, as shown by 12 *Delaware Laws, page* 132; in 1869, 13 *Del. Laws,* 423; in 1871, 14 *Del. Laws,* 141; in 1873, 14 *Del. Laws,* 570.

While we appreciate the suggestion of the desirability of having each property benefitted by a local improvement contribute to the cost thereof, yet we think the propriety of any particular exemption is a matter exclusively for legislative action. We recognize that exemptions from either taxation or assessment are not favored, but the Statute must not be given such a strict or rigid construction as to defeat its obvious purpose and intent.