STATE TAX COMMISSIONER, Appellant, v. IRENEE DU PONT, SR., Trustee for Irenee du Pont, Jr., under a Declaration of Trust dated June 4, 1924, Appellee.

STATE TAX COMMISSIONER, Appellant, v. WILMINGTON TRUST COMPANY, Trustee for various Trusts, Appellee.

(*November* 16, 1955.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Herbert L. Cobin,* Chief Deputy Attorney-General, and *Wilfred J. Smith, Jr.,* Deputy Attorney-General, for appellant.

*William S. Potter* (Henry R. Horsey with him on the brief), of Berl, Potter and Anderson, for appellees.

Supreme Court of the State of Delaware, Nos. 10 and 11, 1955.

SOUTHERLAND, C. J.:

These cases call for a construction of the provisions of the state income tax law of 1949 relating to trusts. Two questions are presented.

1. *When income of a trust is accumulated for future distribution and not distributed to the beneficiaries of the trust, and federal income and other taxes on such income are paid, are the amounts of tax so paid excludable—or deductible—under the provisions of the act of May 27, 1949, from the gross income of the trust for the purpose of computing the state income tax?*

2. *If not, were the deficiency assessments made within the two-year period fixed by the Statute?*

There are two cases before us. The facts of the first are as follows:

Irenee du Pont, Sr., trustee under a trust dated June 4, 1924, filed a state income tax return for the year 1950. The return showed total income of the trust as $988,457.87. From this amount there was deducted payments of income to the beneficiary of $170,000; federal and Canadian income taxes of $377,885.31; and $10,576.48 of accounting fees and trustee's commissions. After the deduction of the exemption of $1,040 there remained a balance of $468,956.08 which was reported as taxable income.

The second case concerns the income tax return of Wilmington Trust Company, trustee under a trust dated March 30, 1925, for the year 1950. The same principle was followed in computing the tax. In addition to deducting payments to the beneficiary the trustee also deducted federal and Canadian income taxes, payments to the trustee, and a payment to the State Tax Department (the nature of which does not appear).

In both cases the Tax Commissioner disallowed all the deductions for taxes and assessed additional tax. He made no objection to the deductions for trustees' commissions or for accounting expense.

The taxpayers appealed to the Tax Board. They urged two contentions: (1) that the taxes so deducted were excluded from taxable income by the language of two sections of the income tax laws; and (2) that in any event the deficiency assessments had not been made within the prescribed time. The Board rejected the latter contention, but sustained the first, and accordingly ordered the deficiency assessments abated. On appeal to the Superior Court, that court affirmed the order of the Tax Board on both points. The Commissioner brings the cases here for review.

1. *Were the federal and Canadian income taxes excludable —or deductible—from the income of the trusts for the purpose of the state income tax?*

The applicable statute is the act of May 27, 1949, 47 *Del. L.* Ch. 147. That act was by its terms limited to the taxable years 1949 and 1950. Whereas pre-existing income tax laws imposed a tax on "net income", the 1949 act imposes the tax upon "gross income". Hence it is often referred to as "the gross income tax law", although, as the court below correctly said, it is not, strictly speaking, such a law, since it merely narrows the scope of the exemptions and deductions permitted under the prior laws.

A summary of its provisions pertinent here is as follows:

By Section 1(b) of the act the word "taxable" is defined to include, among others, the following:

"(1) A natural person twenty-one years of age or over who is a resident or citizen of the State of Delaware or who has been a resident or citizen of the State of Delaware at any time during the income years.

"(2) A minor with gross income of One Thousand and Forty Dollars ($1040.00) or more who is a citizen or resident of the State of Delaware, or who has been a citizen or resident of the State of Delaware at any time during the income year.

"(3) Every trustee of a trust whether created by a resident or non-resident of Delaware, to the extent that the income of the trust is accumulated or distributed during the taxable year to or for the benefit of a resident of the State of Delaware."

It is to be noted that all these three paragraphs are concerned with the matter of Delaware residence or citizenship as the foundation of liability to tax.

Section (2)(a) levies the tax, at specified rates, "on the gross income received * * * by such taxable" during the year, "subject to the exemptions, credits and deductions provided for in Section 3 and Section 4".

Section 3, headed "Exempted Income", specifies certain items of income that are exempt from tax, e.g., proceeds of life insurance policies, property acquired by gift or inheritance, amounts paid as workmen's compensation, and so forth. The same section grants to every taxable a personal exemption of $1,040.

Section 4 allows certain specified deductions, if incurred by the taxable in carrying on any business or in connection with real estate held for income-producing purposes.

Section 5(a) provides:

"The tax imposed by this Act shall apply to the income of estates or of any kind of property held in trust whether distrib-

utable currently or accumulated for future distribution but only to the extent that such income may be distributable or accumulated for future distribution to a taxable as defined in Section 1. of this Act."

Section 5(c) provides:

"In determining the gross income of an estate or trust under this Section there shall be allowed as a deduction the amount of any gross income properly paid to or credited subject to withdrawal by any legatee, heir or other beneficiary, but such shares of gross income to the extent distributed or distributable to a taxable as defined in Section 1. of this Act shall be included as taxable income on the return of the beneficiary."

A comparison of these sections with the sections of like import in the prior income tax laws reveals that these five sections of the act of 1949 conform, generally speaking, to a statutory scheme that has been followed almost from the beginning of the imposition of the income tax in this state, with the exception that the taxable base is gross instead of net income. See, for example, the act of March 29, 1921, 32 *Del. L.* Ch. 9, and the act of April 2, 1929, 36 *Del. L.* Ch. 8, 30 *Del. C.* § 1101 *et seq.* Thus, Section 1 is the "definition section", Section 2 the "levying section", and so on. This statutory scheme must be kept in mind, and the sections of the 1949 act above referred to must be construed in the light of their historical development.

The contention of the taxpayers is founded upon the clause in Section 1(b)(3) beginning with the words "to the extent that", and the similar clause in Section 5(a). (This clause we shall call, for convenience, "the exclusionary clause".) It is contended that this clause excludes certain of the trust income from the tax base. The argument runs as follows:

By the language of the exclusionary clause, the tax is imposed *only* upon income actually accumulated for future distribution or actually distributed to beneficiaries. Therefore any income of that trust that is neither actually accumulated nor dis-

tributed is excluded from the tax base. Hence all amounts required to be disbursed for any other purpose, *e.g.*, taxes and expenses, are necessarily so excluded.

The thrust of this argument is directed to accumulations, which are taxable only to the trustee. Income distributed to beneficiaries is deductible from the gross income of the trust and taxable direct to the beneficiaries. Hence the important consequence of accepting this contention is that federal income taxes upon income directed to be accumulated are (in effect) made deductible under state law from the gross income of the trust.

So far as concerns the provisions of Section 1, the soundness of this contention is on its face questionable. Allowances for expenditures from gross income have customarily been granted in the form of specific deductions under Section 4 of the various acts. One would not expect to find them allowed by way of "exclusion" or "exemption" in the paragraphs of Section 1 of the law defining the persons subject to tax. This consideration suggests the need for an analysis of the language of the exclusionary clause, and for an examination of its historical background.

Section 1(b)(3) defines as a taxable every trustee, regardless of the residence of the creator of the trust, "to the extent that the income of the trust is accumulated or distributed during the taxable year to or for the benefit of a resident of the State of Delaware."

There is no doubt that the language of the quoted phrase impliedly excludes from taxation trust income for the benefit of non-residents. But is a second exclusion intended? The taxpayers construe the phrase as embodying two exclusions: (1) so much of accumulated income as is not actually accumulated, *i.e.*, so much thereof as is required to be spent for any purpose, and (2) income to non-residents. Such a construction is a possible one, although it requires the exclusionary clause to be read as though it were split into two parts—as though the words "to the extent that", were repeated, with appropriate additional language, before the clause relating to income of residents. A more

natural construction of the language, and we think the correct one, is that it embodies one exclusion only—income to non-residents. The history of this exclusionary clause supports such a construction.

The language first appears (in somewhat different form) in the act of April 14, 1939, 42 *Del. L.* Ch. 61, 30 *Del. C.* § 1101, which amended Section 1(b) of the then existing law, relating to fiduciaries.

The definition in the 1939 act reads:

"A trustee, if but only to the extent that, the net income of the trust for the income year (a) is distributed or irrevocably set aside for future distribution in whole or in part to a person who at any time during such income year was a resident of Delaware, and/or (b) may be distributed in whole or in part to the creator of the trust upon the happening of some event or the exercise of any power which he reserved thereunder if at the time of creation of the trust and at any time during such income year he was a resident of Delaware."

It is clear that the purpose of clause (a) of this section was to exempt from taxation so much of the net income of the trust as was distributed or accumulated to or for the benefit of non-residents of the state, and that this was its sole purpose. Since it referred to "net income", it had nothing to do with the exclusion from gross income of taxes or other expenses. The "exclusion" (*i.e.*, deduction) of taxes and expenses from gross income was governed by Section 4 relating to deductions, which by Section 5 were made allowable to trustees. See 1935 *Code* Ch. 6, Sec. 114(c), and 40 *Del. L.* Ch. 11. When the comparable Section 1(b)(3) was written into the 1949 act, the word "net" was changed to "gross", because by Section 2 the tax is imposed on gross income. With this change the exclusionary clause, in somewhat different form, was carried into the 1949 act.

Now, when this clause was so carried over, the legislature, we think, intended it to serve the same purpose as in the 1939

act—the exclusion from taxation of trust income of or for the benefit of non-residents, and no other purpose. The language of the 1949 act—"income * * * accumulated or distributed"—, like the comparable language of the 1939 act—"income * * * distributed or irrevocably set aside for future distribution"—, serves merely to describe the characteristics of taxable trusts— the accumulation or distribution of income for someone's benefit. It cannot be divorced from the succeeding prepositional phrase relating to residents of the state. The entire exclusionary phrase in the 1949 act is to be read as it is read in the 1939 act—as a whole. So read, it contains one exclusion only—trust income for the benefit of non-residents.

The taxpayers concede that if Section 1(b)(3) of the 1949 act stood alone, the construction for which they contend might be somewhat doubtful. But they earnestly contend that the repetition of the language in Section 5(a) resolves the question in their favor.

The repetition of the exclusionary clause in Section 5(a) of the 1949 act was new. It is not found in Section 5(a) of the prior act of 1929. Nor does it appear in the comparable section of the act of 1951. 30 *Del. C.* § 1151. It may therefore be argued by the taxpayers that the insertion of the exclusionary clause in Section 5(a) of the 1949 act must have been for a purpose other than the exclusion of non-resident income, since by the definition of a "taxable" in Section 1(b)(3) the intention to exempt income of non-residents was plainly evidenced. But we attribute little weight to this circumstance. Since Section 1, strictly speaking, deals only with persons taxable, and Section 5 deals directly with income taxable, the clause may well have been inserted in Section 5(a) out of an abundance of caution. It is clear, we think, that the sole purpose of the clause in all three instances is the same, *viz.,* the exclusion from taxation of trust income of non-residents. Why should the clause have one meaning in Section 1(b)(3) and another in Section 5(a) of the same act?

An examination of the other sections of the act sup-

ports the above conclusion. By Section 2 of the 1949 act the tax is imposed on the "gross income" of "every taxable"—not on net income. It is "subject to the exemptions, credits and deductions provided for in Section 3 and Section 4". The inference is that Sections 3 and 4 are comprehensive, and that no additional exemptions and deductions of the kind therein specified are permitted. If a further exemption, applicable only to trusts, was intended, why was it not specifically set forth? Why attempt to grant another exemption in a roundabout or indirect fashion? The special deduction for income distributed to beneficiaries is the subject of a specific provision in Section 5(c). It is elementary that when a taxpayer claims a special exemption from a tax imposed on all income, the exemption must appear in clear and unambiguous language. *Mayor & Council of Wilmington v. Riverview Cemetery Co.*, 8 *W. W. Harr.* (38 *Del.*) 182, 185, 190 *A.* 111, 113.

This consideration is of particular force here, since the obvious purpose of the 1949 act was to obtain increased revenue by eliminating, as to all taxpayers except those engaged in business, the customary deductions for expenses, taxes, losses, and so forth.

The historical background of the income tax laws also supports the conclusion above stated. It has always been the policy of the income tax statutes to deal specifically with allowances for taxes, and to treat them as deductions—not as exemptions or exclusions. Thus, prior to 1949 all federal income taxes were deductible from gross income. See Section 4 of the act of 1929. In the 1949 act such a deduction is denied even to those engaged in business. The tax deduction allowable to them under Section 4 is—

"Taxes, *except Federal income taxes,* taxes imposed by this act and taxes assessed for local benefits" etc. [Italics supplied].

Other taxpayers were entitled to no deductions for taxes. In 1951 the deductibility of federal income taxes was restored. See 30 *Del. C.* § 1118. The present law limits the deduction of

such taxes to the sum of $300. Act of 1953, 49 *Del. L.* Ch. 104, 30 *Del. C.* § 1118.

In the face of this unbroken legislative policy to deal specifically with the deduction of federal income taxes, as well as other taxes, it is manifestly unreasonable to say that the legislature, in defining a taxable, and in declaring trust income to be subject to tax, intended by language relating primarily to the matter of residence to grant to trusts for accumulations a special exemption or deduction in respect of federal income taxes or other taxes. The court below recognized this difficulty, but was of opinion that the language of Sections 1(b)(3) and 5(a) was so clear in its intent to exclude income not actually accumulated that there was no room for construction. As we have before stated, we think that the language of these sections admits of an alternative construction, and that the alternative construction should be adopted.

The Tax Board, by a majority, was of opinion that a trust must be viewed as a separate taxable entity, and that the language of Section 5(a) therefore limited the extent to which trust income was taxable to the amount of income actually accumulated. Of course a trust, like a natural person, is in some sense a separate taxable entity, but it does not follow that Section 5 is a comprehensive section determining in itself the extent of liability to tax of trust income. On the contrary, Section 2 must be looked to for the levy of the tax and the rates of tax, and Section 3 for the exemptions from tax. The purpose of Section 5 is to bring trust income within the sweep of Section 2, to allow a special deduction for income distributed to beneficiaries and to provide the mechanics for collecting the tax.

The taxpayers cite a ruling of the Attorney General's office dated January 23, 1950 to the effect that Section 1 of the act of 1949 fixes the amount of the fund that is taxable to a trustee and excludes from taxation the trustee's commissions. The opinion contains no analysis of the act and no discussion of the question. It is unnecessary to review it, since the deductibility of such commissions is not before us.

The taxpayers further argue that the Tax Commissioner has in practice followed this ruling and in taxing trusts has excluded from taxation trustees' commissions and other expenses—as indeed he has done in these cases. Hence it is said that his ruling in the cases before us is inconsistent with his own practice. Whether that practice is correct is a question, as above stated, that is not before us. Assuming the inconsistency, and further assuming that the exclusion of such expenses was erroneous, we cannot see how the validity of the assessments actually made is thereby impaired.

For the foregoing reasons, we are constrained to disagree with the holding of the Tax Board, and of the court below, with respect to the exclusion from taxable income of amounts disbursed by the trustees for taxes.

This conclusion requires us to examine the taxpayers' second contention.

2. *Were the deficiency assessments made within the time permitted by law?*

The statute provides that income tax returns "shall be filed * * * on or before the thirtieth day of April in each year, for the preceding year". Amendatory Act of February 19, 1943, 44 *Del. L.* Ch. 5, 30 *Del. C.* § 1168.

The statute further provides that the Tax Department may make deficiency assessments "at any time within two years after the time when the return was due, or if not filed on the due date within two years from the date the return was filed." Amendatory Act of April 19, 1945, 45 *Del. L.* Ch. 10, 30 *Del. C.* § 1181.

The returns here involved were for the year 1950 and were filed at times prior to April 29, 1951. The deficiency assessments were made April 29, 1953—more than two years after the returns were filed, but within two years after April 30, 1951.

The taxpayers' argument is that the conditional clause beginning with the words "or if not filed" is to be construed as

meaning that the actual date of filing the return is in all cases the date from which the two-year period begins to run. If this is so, then the preceding clause is without purpose or meaning, as the court below pointed out. If this had been the legislative intent, it would have been a simple matter to provide only that a deficiency assessment might be made within two years from the date of filing the return. But that was not done, and the language of the preceding clause must be given effect. Its plain meaning is that the due date—*i.e.*, April 30—fixes the starting date of the two-year period for all returns filed in time, that is, on or before April 30. The language of the second clause—"if not filed on the due date"—refers to returns not filed in time, that is, after April 30. The preposition "on" here means "by".

If there were any doubt about the legislative intent, it would be resolved by the history of the present provision of the statute. Prior to 1945, the statute provided that the deficiency assessments might be made "at any time within two years after the time when the return was due or filed". *Revised Code of* 1935, Ch. 6, § 125(b). This language was obviously ambiguous.

In his annual report to the Governor for 1944 the Tax Commissioner recommended nine changes in the income tax laws. One of these was as follows:

"7. To clarify Section 125(b) as to the two-year limitation on the making of assessments so that it will be clear that assessments may be made within two years after the due date for filing the return and, if filed after the due date, within two years after such return was filed." *Report of Delaware State Tax Commissioner,* 1944, Division 4.

All of the recommended changes were enacted into law. See 45 *Del. L.* Ch. 10.

We are justified in saying, therefore, that the legislature intended to enact, and did enact, a provision respecting the time for making deficiency assessments that conformed to the Tax Commissioner's recommendation.

The taxpayers suggest that if the General Assembly had intended to make the due date—April 30—the starting point for the two-year period, it could and should have used language like that of the comparable federal act—that any return filed before the due date should be deemed to have been filed on the due date. No doubt this would have been one way of amending the law, but it was not the only way. Even if it would have been a preferable way, still the language of our law, especially in the light of the Commissioner's recommendation, is clear enough.

We are in accord with the decision of the Tax Board and with the decision of the court below that the assessments were made within the prescribed time.

It follows from the conclusions above set forth that the orders of the Superior Court of July 8, 1955, affirming the findings and decision of the State Tax Board must be affirmed in part and reversed in part. The cause is remanded to the Superior Court, with instructions to modify its orders of July 8, 1955 to conform with this opinion, and to remand the cases to the State Tax Board with instructions to affirm the rulings of the Tax Commissioner.